

**Direction des Affaires Civiles et du Sceau**
**Bureau du droit de l'Union, du droit international privé**
**et de l'entraide civile**
**13 Place Vendôme**
**75042 PARIS CEDEX 01**

Paris, le 27-01-2017

LE GARDE DES SCEAUX,
MINISTRE DE LA JUSTICE
À
DANIEL F BLANKS
50 NORTH LAURA STREET, APPARTEMENT 4100
FL 32202 JACKSONVILLE
ETATS-UNIS D'AMERIQUE

℗ Téléphone : 01 44 77 62 43 ou 65 73
Télécopie : 01 44 77 61 22

**00.01.2017 001035**

**Référence à rappeler :**
**8049TR2016 ETATS-UNIS D'AMERIQUE**
**58NOTIF2016**
**Demande Daniel F Blanks-Procédure n°3:16-ap-00183-**
**PMG-Convocation devant le Tribunal des Faillites des**
**Etats-Unis, district méridional de Floride**

**Destinataire : RÉPUBLIQUE FRANÇAISE**

**Objet :** Retour d'une demande de notification d'acte judiciaire.

**Texte de référence :** Circulaire NOR JUS CO5 20 961 C (CIV/20/05) du 1er février 2006, relative aux "Notifications internationales des actes judiciaires et extrajudiciaires en matière civile et commerciale" [ la partie pratique de la circulaire est disponible sur l'Internet à l'adresse : www.entraide-civile-internationale.justice.gouv.fr

J'ai l'honneur de vous faire parvenir sous ce pli les documents établis à la suite d'une demande de notification internationale.

Cachet du Ministère de la Justice

LD

# ATTESTATION
## CERTIFICATE

L'autorité soussignée a l'honneur d'attester conformément à l'article 6 de ladite Convention,
The undersigned authority has the honour to certify, in conformity with Article 6 of the Convention,

☒ **1. que la demande a été exécutée\***
that the document has been served\*

| — **le (date)** / the (date): | 16/12/2016 |
|---|---|
| — **à (localité, rue, numéro):**<br>at (place, street, number): | TOUR PASCAL B – 92055 LA DEFENSE CEDEX |

| — **dans une des formes suivantes prévues à l'article 5 :**<br>in one of the following methods authorised by Article 5: | | |
|---|---|---|
| ☒ | a) | **selon les formes légales (article 5, alinéa premier, lettre a)\***<br>in accordance with the provisions of sub-paragraph a) of the first paragraph of Article 5 of the Convention\* |
| ☐ | b) | **selon la forme particulière suivante\*:**<br>in accordance with the following particular method\*:<br>_____ |
| ☐ | c) | **par remise simple\***<br>by delivery to the addressee, if he accepts it voluntarily\* |

**Les documents mentionnés dans la demande ont été remis à :**
The documents referred to in the request have been delivered to:

| **Identité et qualité de la personne :**<br>Identity and description of person: | Ministère de l'Environnement, de l'Energie et de la Mer - Monsieur Jean-Luc LAVALARO (Courrier Central TPA) |
|---|---|
| **Liens de parenté, de subordination ou autres, avec le destinataire de l'acte :**<br>Relationship to the addressee (family, business or other): | _____ |

☐ **2. que la demande n'a pas été exécutée, en raison des faits suivants\* :**
that the document has not been served, by reason of the following facts\*:

| |
|---|
| |

☐ **Conformément à l'article 12, alinéa 2, de ladite Convention, le requérant est prié de payer ou de rembourser les frais dont le détail figure au mémoire ci-joint\*.**
In conformity with the second paragraph of Article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement\*.

*Annexes / Annexes*

| **Pièces renvoyées :**<br>Documents returned: | _____ |
|---|---|
| **Le cas échéant, les documents justificatifs de l'exécution :**<br>In appropriate cases, documents establishing the service: | Avis de réception de l'envoi en recommandé n° 1A 064 825 1070 9 |

\* s'il y a lieu / if appropriate

| **Fait à / Done at** PARIS,<br><br>**le / the** 06/01/2017 | **Signature et / ou cachet**<br>Signature and/or stamp |
|---|---|

PREUVE DE DÉPÔT
À CONSERVER PAR LE CLIENT

LA POSTE

RECOMMANDÉ AVEC AVIS DE RÉCEPTION

Numéro de l'envoi : **1A 064 825 1070 9**

58
Noté
2016

Expéditeur

MINISTERE DE LA JUSTICE
DACS
BDIP - Ref. 8049 TR 2016
13 Place Vendôme
75 042 PARIS Cedex 01

Conservez ce feuillet, il sera nécessaire en cas de réclamation.
En cas échéant, vous pouvez faire une réclamation dans n'importe quel bureau de Poste.
Les conditions spécifiques de vente de la lettre recommandée sont disponibles dans votre bureau de Poste ou sur le site www.laposte.fr *

Pensez également à la **Lettre Recommandée Électronique**, consultez www.laposte.fr/lre.

SDIG V15 - P1C7 - 2012690271011 - 08/11

La Poste SA, au capital de 3 400 000 000 €, RCS Paris 356 000 000, 44 boulevard de Vaugirard 75757 Paris CEDEX 15

Destinataire

MINISTERE DE L'AMENAGEMENT
DU TERRITOIRE ET DE LA MER
Direction des affaires juridiques
Tour Pascal B
92055 LA DEFENSE CEDEX

Les avantages du service suivi :
Vous pouvez connaître, à tout moment, 24h/24, la date de distribution de votre
lettre recommandée ou le motif de non-distribution.
3 modes d'accès direct à l'information de distribution.
▪ SMS : Envoyer le numéro de la lettre recommandée au 32 80
(0,35€ TTC + prix d'un SMS)
▪ Le site internet : www.laposte.fr/suivi
▪ Le service vocal interactif : 0 969 397 321 (prix d'un appel non surtaxé).

LA POSTE
15-12-2016
FRANCE

| Date : | Prix : | CRBT : |
|---|---|---|
| Niveau de garantie : | 16 € | 153 € | 458 € |



**Tribunal des faillites des États-Unis**
**District méridional de Floride**

In re :
**RMS TITANIC, INC.**
Débiteur

Affaire de faillite no. **3 : 16-bk-02230-PMG**

**RMS TITANIC, INC.**
Demandeur
v.
**LA RÉPUBLIQUE FRANÇAISE,**
**ALIAS LA RÉPUBLIQUE DE FRANCE**
Défendeur

Procédure contradictoire no. : **3 : 16-ap-00183-PMG**

## *CONVOCATION À UNE PROCÉDURE CONTRADICTOIRE*

**VOUS ÊTES CONVOQUÉ** et on vous demande de soumettre une requête ou de répondre à la plainte qui est jointe à cette convocation auprès du Greffier du Tribunal des faillites dans un délai de 30 jours après la date d'émission de la présente convocation ; de manière exceptionnelle, les États-Unis et ses fonctionnaires et agences doivent soumettre une requête ou répondre à la plainte dans un délai de 35 jours après l'émission.

> **L'adresse du greffier**
>
> **Greffier, Cour des faillites des États-Unis**
> **District Méridional de Floride**
> **300 North Hogan Street Appartements 3 – 150**
> **Jacksonville, FL 322012**

En même temps, vous devez fournir une copie de la requête ou une réponse à l'avocat du demandeur.

> **Nom et adresse de l'avocat du demandeur**
>
> **Daniel F Blanks**
> **50 North Laura Street, Appartement 4100**
> **Jacksonville, FL 32202**

Si vous présentez une requête, le délai dont vous disposez pour répondre se soumet à la Loi Fédérale de la Procédure de Faillite 7012.

**SI VOUS NE RÉPONDEZ PAS À LA PRÉSENTE CONVOCATION, VOTRE DÉFAILLANCE SERA CONSIDÉRÉ COMME ÉTANT VOTRE CONSENTEMENT RELATIF À L'ENREGISTREMENT DU JUGEMENT AUPRÈS DE LA COUR DES FAILLITES ; UN JUGEMENT PAR DÉFAUT PEUT ÊTRE PRONONCÉ À VOTRE ENCONTRE POUR LES RÉPARATIONS DEMANDÉES DANS LA PLAINTE.**

REÇU LE

2 3 NOV. 2016

BDIP

## Règle 7001-1

## PROCÉDURE CONTRADICTOIRE – PROCÉDURES

(a) *Dispositions générales.* Cette règle s'applique à toutes les procédures contradictoires et, selon la décision de la Cour, aux affaires contestées. Dans la mesure où les périodes établies dans la présente règle entrent en conflit avec celles établies dans les Règles Fédérales de Procédure Civile, les Règles Générales de Procédure de Faillite ou avec d'autres Règles Locales, la présente règle a la primauté.

(b) *La signification.* Le demandeur est tenu de transmettre la convocation issue par le Greffier, la plainte et une copie de la présente règle dans un délai de sept jours après l'émission de la convocation, tel que requis par la Règle Fédérale de Procédure de Faillite 7004(e). Si la convocation initiale et les documents qui y sont joints ne sont pas transmis en temps utile, le demandeur peut solliciter immédiatement l'émission d'une convocation alias et peut transmettre la convocation alias avec la plainte et une copie de la présente règle. Le demandeur est tenu de transmettre ces documents aux défendeurs dans un délai maximal de 28 jours après le dépôt de la plainte. Si une autre partie est nommée ensuite en tant que demandeur ou défendeur, le demandeur est tenu de transmettre une copie de la présente règle à chaque partie supplémentaire dans un délai de sept jours après la date où la partie supplémentaire est nommée.

(c) *Preuve de signification.* Le demandeur est tenu de déposer immédiatement une preuve de la signification, qui atteste la transmission de chaque convocation, de la plainte et de la présente règle à chaque défendeur.

(d) *Défaut de signification.* Si le demandeur ne transmet pas en temps utile et de manière efficace la convocation et la plainte, la Cour peut rejeter la procédure contradictoire pour absence de poursuite, sans notification ou audience ultérieure. Si le demandeur a besoin d'un délai supplémentaire pour effectuer la signification, il doit déposer une requête pour demander un délai supplémentaire.

(e) *Défaillances.* Si le défendeur n'a pas déposé une réponse en temps utile, le demandeur est tenu de solliciter un enregistrement de la défaillance du défendeur respectif par le Greffier et le jugement par défaut dans un délai maximal de 60 jours après le dépôt de la plainte. Si le demandeur requiert un délai supplémentaire pour solliciter l'enregistrement de la défaillance ou le jugement par défaut, il doit déposer une requête pour demander un délai supplémentaire.

(f) *Déclarations initiales.* En conformité avec la Règle Fédérale de Procédure Civile 26(f), pendant ou avant la Rencontre des Parties décrite ci-dessous et sans des demandes formelles de découverte, chaque partie doit :

    (1) Identifier par écrit le nom et, s'ils sont connus, l'adresse et le numéro de téléphone de chaque individu ayant des informations qui peuvent être divulguées et qui font référence aux faits disputés ;

    (2) Fournir des copies ou une description écrite, par catégories et lieux, de tous les documents qui sont importants dans la perspective des faits disputés ;

    (3) Fournir un calcul écrit de tous les dommages réclamés ;

    (4) Fournir une copie de tout accord d'assurance qui puisse être disponible afin de se conformer à un jugement rendu, en totalité ou en partie, ou d'indemniser ou de rembourser les paiements effectués pour se conformer au jugement.

(g) *Rencontre des Parties.* Dans un délai d'au moins 14 jours avant la conférence préparatoire ou de mise en état, les avocats des parties ou les parties, si elles ne sont pas représentées par des avocats, se rencontreront (« la Rencontre des Parties ») afin de discuter :
  (1) Les prétentions et les défenses des parties ;
  (2) La possibilité d'arriver à un règlement à l'amiable ;
  (3) Les déclarations initiales requises dans la sous-section (f) ci-dessus ; et
  (4) Un plan d'enquête, tel que requis par la Règle Fédérale de Procédure Civile 26(f). S'il n'y a pas de dispositions contraires données par la Cour, les parties peuvent annoncer oralement leur plan d'enquête lors de la conférence préparatoire ou de mise en état ; elles ne sont pas tenues de déposer un rapport écrit.

(h) *La conférence préparatoire ou de mise en état.* La Cour organisera une conférence préparatoire ou de mise en état à tout moment après le dépôt d'une contestation d'une demande mais, en tout cas, dans un délai approximatif de 90 jours après le dépôt de la plainte. Les parties n'ont pas le droit de présenter des témoignages ou des preuves documentaires lors de la conférence de mise en état. La Cour, en tout cas, peut considérer importants des faits non-disputés, des affidavits offerts sans objection par les parties opposées, des éléments relatifs à la connaissance d'office et des admissions effectuées pendant la conférence de mise en état par les parties, directement ou par l'intermédiaire des avocats respectifs.

(i) *L'enquête.*
  (1) *Dispositions générales.* Les parties doivent connaitre les Règles Fédérales sur l'enquête, y compris les Lois Locales 7026-1, 7030-1 et 7037-1.
  (2) *Début de l'enquête.* S'il n'y a pas d'exemption établie par la Cour, l'enquête ne peut commencer qu'après avoir obtenu une conclusion suite à la Rencontre des Parties.
  (3) *Délai de l'enquête.* Les parties sont tenues d'effectuer l'enquête dans un délai maximal de sept jours avant la date du procès ; par contre, les parties peuvent prendre des dépositions programmées avant jusqu'à la date du procès.
  (4) *Disputes sur l'enquête.* S'il y a une dispute sur l'enquête, les parties doivent essayer d'abord de résoudre le litige de bonne foi, tel que requis par la Règle Fédérale de Procédure de Faillite 7037(a)(1). Si les parties ne sont pas capables de résoudre la dispute, toute partie peut demander à la Cour une conférence par téléphone, de manière que la Cour rende une décision informelle et préliminaire sur la dispute qui porte sur l'enquête, sans porter atteinte au droit de toute partie de déposer une requête formelle.

(j) *Les requêtes.*
  (1) *Les requêtes doivent être déposées en utilisant les procédures d'avis contraire de la Cour.* Toutes les requêtes, à l'exception des types de requêtes mentionnés ci-dessous, doivent être déposées et remises en utilisant les procédures d'avis contraire de la Règle Locale 2002-4 :
    (i) Les requêtes stipulées, communes ou de consentement ;
    (ii) Les requêtes pour prolongement des délais ;
    (iii) Les requêtes de continuation ;
    (iv) Les requêtes portant sur les situations d'urgence ou sur une exemption immédiate ;
    (v) Les requêtes en vue de l'enregistrement de la défaillance et du jugement par défaut ; et
    (vi) Les requêtes en vue du retrait de la référence, en conformité avec la Règle Locale 5011-1.

Les instructions sur l'avis contraire doivent prévoir une période de réponse de 14 jours, à l'exception des requêtes de jugement sommaire, dans le cas desquelles le temps de réponse sera de 21 jours, s'il n'y a pas de stipulation contraire donnée par la Cour. L'auteur de la requête peut déposer une réponse, s'il pense nécessaire, dans un délai maximal de sept jours après le dépôt de la réponse.

(2) *Le format.* Toutes les requêtes, réponses et répliques doivent respecter le Guide Stylistique de la Cour, qui se trouve sur le site Internet de la Cour, www.flmb.uscourts.gov. Les documents doivent être rédigés à interligne double et, le cas échéant, doivent inclure un mémorandum juridique qui doit comprendre l'argument et la mention des autorités. S'il n'y a pas d'exemption donnée par la Cour, les mentions et les mémorandums d'appui ne doivent pas dépasser dix pages.

(3) *Requêtes d'urgence.* La Cour prendra en compte les requêtes d'urgence à tout moment, à son entière discrétion. Les requêtes d'urgence doivent respecter la Règle Locale 9004-2(e) et doivent être déposées en utilisant le lien Dépôts d'urgence/Questions urgentes/Requêtes d'urgence qui se trouve sur le site Internet de la Cour, www.flmb.uscourts.gov.

(4) *Requêtes déposées afin d'établir si l'affaire est centrale.* Une partie qui conteste l'enregistrement des décisions ou les jugements finaux donnés par la Cour des faillites sur tout problème qui fait référence à la procédure contradictoire doit déposer une requête, en respectant la date établie pour déposer une réponse à la plainte, par laquelle elle doit demander que la Cour établisse si la procédure est une procédure centrale ou si elle se soumet à l'enregistrement des décisions ou des jugements finaux par cette Cour. On considérera qu'une partie qui ne dépose pas une requête dans le délai établi pour le dépôt d'une réponse à la plainte a exprimé son accord avec l'enregistrement par la Cour des faillites des décisions et des jugements finaux de la procédure, qui peuvent être contestées seulement par appel, en conformité avec 28, Code des États-Unis § 158.

(5) *Requêtes pour jugement sommaire.* Les requêtes pour jugements sommaires doivent être déposées dans un délai maximal de 60 jours avant le procès. La Cour peut établir une audience sur la requête pour jugement sommaire, mais cela n'est pas obligatoire. S'il n'y a pas de disposition de la part de la Cour, le procès aura lieu le jour établi, même s'il y a une requête pour jugement sommaire en cours.

(k) *Déclarations concernant les témoins et emploi des dépositions avant le procès.* La Règle Fédérale de Procédure Civile 26(a)(3) (à l'exception des dispositions qui portent sur les limites) régira les déclarations concernant les témoins et l'emploi des dépositions avant le procès. Les parties doivent déposer et échanger des noms, des numéros de téléphone et des adresses des témoins, tout comme tout autre élément des dépositions dans un délai maximal de 28 jours avant le procès. Les objections concernant l'emploi des dépositions devront être déposées dans un délai de 14 jours après les déclarations. Les parties peuvent se référer à toute stipulation factuelle ou concernant les preuves avant le procès.

(l) *Les preuves.*

(1) *Les preuves qui seront déposées et échangées par l'intermédiaire du CM/ECF.* Les parties doivent préparer les preuves en conformité avec la Règle Locale 9070-1 et l'Ordre Administratif FLMB-2015-6 qui porte sur les Preuves Stockées sur support électronique et doivent échanger des preuves dans un délai maximal de sept jours avant la date établie pour le procès. Sauf objection écrite concernant l'admissibilité d'une preuve, déposée avant la clôture de l'affaire, le lendemain du procès, toute objection d'admissibilité (autre que celles prévues par la Règle Fédérale sur les Preuves 402 et 403) sera considérée annulée.

(2) *Auto-authentification des enregistrements de l'activité menée régulièrement.* Une partie qui a l'intention de faire recours aux procédures d'auto-authentification prévues par la Règle Fédérale sur les Preuves 902(11) ou (12) afin de présenter comme éléments de preuve des enregistrements concernant les activités menées régulièrement, en conformité avec la Règle Fédérale sur les Preuves 803(6), doit, dans

un délai maximal de 28 jours avant le procès, déposer auprès de la Cour et remettre aux autres parties la déclaration écrite requise par la Règle Fédérale sur les Preuves 902(11) ou (12) et une copie des tous les enregistrements qui sont présentés en vue de l'admission.

(m) *Témoignages des experts.* Sauf si la Cour décide autrement, une partie qui veut offrir des témoignages des experts pendant le procès doit respecter les exigences de la Règle Fédérale de la Procédure Civile 26(a)(2).

(n) *Stipulations.* Toutes les stipulations des parties doivent être préparées par écrit et doivent être signées et déposées immédiatement auprès de la Cour.

(o) *Supplémentation des déclarations.* Les parties sont tenues de supplémenter ou de corriger leurs Déclarations initiales et leurs Déclarations formulées avant le procès, en conformité avec la Règle Fédérale de la Procédure Civile 26(e).

(p) *Sanctions.* Si les exigences de cette règle ne sont pas respectées, cela peut mener à des sanctions, qui peuvent comprendre l'annulation de la plainte d'une partie ou le refus du droit de présenter des preuves ou des témoignages des témoins.

(q) *Règlements à l'amiable.* En conformité avec la Loi Locale 9019-1, les parties sont tenues de notifier immédiatement la Cour concernant tout règlement à l'amiable et de déposer et de transmettre promptement une requête pour demander l'approbation du compromis dans l'affaire principale du débiteur et pas dans la procédure contradictoire. Si la plainte fait valoir seulement des prétentions formulées en conformité avec 11 du Code des États-Unis § 523, une requête d'approbation du compromis n'est pas nécessaire. En tout cas, le cas échéant, les parties peuvent demander l'approbation du règlement à l'amiable en déposant une requête dans la procédure contradictoire.

### Notations du Comité Consultatif

### *2016*

Cette nouvelle règle comprend les dispositions de l'Ordre Administratif archivé FLMB-2014-1, « Ordre Administratif prescrivant les Procédures pour la Procédure Contradictoire ». En plus, la section (f)(4) concernant les déclarations formulées avant le procès est conforme maintenant à la Règle Fédérale de Procédure Civile 26(f). La règle apporte également des clarifications sur l'exigence selon laquelle la requête dans la procédure contradictoire doit être déposée et transmise en utilisant les procédures de l'avis contraire prévues par la Loi Locale 2002-4. Cette règle entre en vigueur le 1er juillet 2016.

## CERTIFICAT DE SIGNIFICATION

Je soussigné, ........., certifie que j'ai l'âge légal, que j'ai eu l'âge légal pendant la signification et que je ne suis pas une partie de l'affaire qui fait l'objet de la signification. De même, je certifie avoir transmis la présente convocation, une copie de la plainte et une copie de la Règle Locale 7001-1 le ......... (date), par :

[o] Le service postal : courrier régulier, courrier rapide des États-Unis, courrier prépayé entièrement, adressé à :

[o] Signification personnelle : Apres le procès, au défendeur ou à un fonctionnaire ou représentant du défendeur, à :

[o] Signification à la résidence : En laissant la copie du procès à la personne adulte ci-dessous, à :

[o] Le service de poste recommandée ou une Institution de dépôt assuré : En envoyant le procès par poste certifiée adressé au fonctionnaire ou au représentant ci-dessous, à :

[o] Par publication : Le défendeur a reçu la copie comme suit : [Veuillez décrire brièvement]

[o] La loi de l'État : Le défendeur a reçu le document en conformité avec les lois de l'État de ......... (nom de l'État).

Sous peine de parjure, je déclare que les faits exposés ci-dessus sont vrais et exacts.

Date
.........

Signature
.........

| Nom imprimé | | |
|---|---|---|
| Adresse commerciale | | |
| Ville | État | Code zip |

TRIBUNAL DES FAILLITES DES ÉTATS-UNIS
DISTRICT MERIDIONAL DE FLORIDE
DIVISION DE JACKSONVILLE

In re :                                    Affaire no. 3 : 16-bk-02230-PMG
RMS TITANIC, INC., *et al.*[1]              Chapitre 11 (Administré conjointement)
Débiteurs

                                           Procédure contradictoire no. :

RMS TITANIC, INC.
Demandeur
                    v.
LA RÉPUBLIQUE FRANÇAISE, ALIAS
LA RÉPUBLIQUE DE FRANCE
Défendeur

## PLAINTE CONTRADICTOIRE

Le demandeur, RMS Titanic, Inc. (« le Demandeur »), par et par l'intermédiaire de ses avocats soussignés, allègue et porte plainte par la présente contre le Défendeur, la République Française, alias la République de France (« la France » ou « le Défendeur »), comme suit :

## NATURE DE L'ACTION

1. Le présent document représente une procédure contradictoire introduite en conformité avec les Règles 7001(2) et (9) des Règles Fédérales sur la Procédure de Faillite (« les Règles sur la faillite ») et avec les Sections 105 et 363 du Titre 11 du Code des États-Unis, §§ 101 et suiv. (« le Code de la faillite »), ayant comme but de demander : (i) un jugement déclaratoire, en conformité avec la Règle sur la faillite 7001(9), conformément auquel la France n'a pas d'intérêt dans les Artefacts français (tel que défini ci-dessous) ; ou (ii) alternativement, une décision, en conformité avec la Règle sur la faillite 7001(2) sur la validité, la priorité ou l'étendue de tout intérêt de la France dans les Artefacts français (tel que défini ci-dessous).

## JURIDICTION ET COMPÉTENCE

2. La présence Cour est compétente en la matière, en conformité avec 28 Code des États-Unis §§ 157 et 1334(b).
3. La présente procédure contradictoire est une procédure centrale, en conformité avec 28, Code des États-Unis § 157(b)(2).

---

[1] Les Débiteurs mentionnés dans les affaires du Chapitre 11, accompagnés par les quatre derniers chiffres de leurs numéros d'identification fédérale aux fins de l'impôt, sont : RMS Titanic, Inc. (3162) ; Premier Exhibitions, Inc. (4922) ; Premier Exhibitions Management, LLC (3101) ; Arts and Exhibitions International, LLC (3101) ; Premier Exhibitions International, LLC (5075) ; Premier Exhibitions NYC, Inc. (9246) ; Premier Merchandising, LLC (3867) ; et Dinosaurus Unearthed Corp. (7309). L'adresse de service des Débiteurs est : 3045, Kingston Court, Appartement I, Peachtree Corners, Georgia, 30071.

4. Le lieu de jugement de cette affaire et de la présente procédure contradictoire dans le présent District est conforme, en conformité avec 28, Code des États-Unis §§ 1408 et 1409.

## LES PARTIES

5. Le Demandeur est un débiteur et un débiteur-non-dessaisi dans l'affaire susvisée dans le Chapitre 11.

6. Le Défendeur est un État souverain, ayant l'adresse de service ci-dessous :

Chambre Nationale des Huissiers de Justice
Service des Actes Internationaux
447, rue Douai
750009, Paris, France

## INFORMATIONS PRÉLIMINAIRES

7. Le 14 juin 2016 (« la Date de la requête »), chaque Débiteur a déposé une requête volontaire auprès de la présente Cour pour demander une réparation, en conformité avec le chapitre 11 du Code des États-Unis, 11 Code des États-Unis §§ 101 et suiv. (avec les amendements ultérieurs, « Le Code de la Faillite »). Les informations préliminaires factuelles concernant les Débiteurs, y compris l'opération commerciale, le capital et la structure des dettes, et les événements qui ont déterminé le dépôt de cette affaire de faillite sont présentés en détail dans le Résumé de l'affaire.

8. Les Débiteurs continuent à gérer et à conduire leurs affaires en tant que débiteur non dessaisi, en conformité avec le Code de la faillite, sections 1107 et 1108.

9. Aucun administrateur ou examinateur n'a été désigné dans l'affaire mentionnée dans le chapitre 11 ; aucune commission n'a pas encore été nommée.

## RÉPARATIONS DEMANDÉES

10. Par l'intermédiaire de la présente procédure contradictoire, le Demandeur sollicite l'enregistrement d'une décision judiciaire qui comprenne et qui soutienne : (i) un jugement déclaratoire, en conformité avec la Règle sur la faillite 7001(9), conformément auquel la France n'a aucun intérêt dans les Artefacts français (tel que le terme est défini ci-dessous) ; ou (ii) alternativement, une décision, en conformité avec la Règle sur la faillite 7001(2) sur la validité, la priorité ou l'étendue de tout intérêt dans les Artefacts français (tel que le terme est défini ci-dessous).

## LES ARTEFACTS DE TITANIC

I. **Les Artefacts français**
11. La société en commandite Titanic Ventures (« TVLP »), un prédécesseur de l'intérêt du Demandeur (appelés collectivement « RMST »), avec l'assistance de l'Institut Français de Recherche pour l'Exploitation de la Mer, l'institut océanographique du Gouvernement Français (« IFREMER »), ont mené une expédition à l'épave de RMS TITANIC en 1987. À l'occasion des 32 plongées effectuées pendant l'expédition, TVLP a récupéré un nombre approximatif de 2.100 artefacts du lieu de l'épave du navire Titanic (« les Artefacts français » ou « la Collection

française »). TVLP a transporté les Artefacts français en France, en vue de la conservation et de la restauration.

12. IFREMER est une agence du gouvernement français, qui se trouve sous le contrôle du Ministère Français de l'Éducation Nationale et du Ministère de l'Environnement, de l'Énergie et des Affaires Maritimes.

13. IFREMER et TVLP ont conclu un contrat d'affrètement qui régit leurs tâches, obligations, droits et bénéfices associés avec l'expédition (« le Contrat d'affrètement »).

14. Une copie conforme du Contrat d'affrètement est jointe aux présentes en tant qu'Annexe A.

15. Le 20 octobre 1993, un Administrateur du Bureau Français des Affaires Maritimes (Ministère de l'Équipement, du Transport et du Tourisme), en conformité avec le procès-verbal, a accordé à la Société le droit aux Artefacts français (« le Procès-verbal »).

16. Une copie conforme du Procès-verbal est jointe aux présentes en tant qu'Annexe B.

17. Le 22 septembre 1993, TVLP a écrit une lettre adressée à la France pour préciser les prétentions de la société concernant les Artefacts français (« la Lettre du 22 septembre 1993 »).

18. Une copie conforme de la Lettre du 22 septembre 1993 et attachée aux présentes en tant qu'Annexe C.

19. La décision de l'Administrateur « mentionnait dûment » des garanties formulées par TVLP, conformément auxquelles il « a convenu d'utiliser ces objets en conformité avec le respect dû à la mémoire de leurs propriétaires initiaux et de ne pas dérouler des transactions commerciales concernant de tels objets, de ne vendre aucun objet et de ne pas effectuer de transactions qui mèneraient à leur dispersion, si cela n'est pas effectué en vue d'une exposition. » Voir l'Annexe C. Ces garanties ont été mentionnées dans le Procès-verbal, mais le Procès-verbal a été inconditionnel.

20. En tant qu'Annexe D, vous trouverez ci-joint une « Note » prétendument issue par l'Ambassade Française, datant du 8 juillet 2016.

## II.  Les Artefacts américains

21. En 1993, RMST a mené une recherche supplémentaire et une expédition de récupération à l'épave du navire Titanic et, le 26 août 1993 a été démarré une action *in rem* à la Cour de District des États-Unis pour le District de l'Est de Virginie ») portant sur les artefacts récupérés à l'occasion de l'expédition de 1993 et de l'épave même. Id.

22. Quelques mois plus tard, la Cour EDVA a prononcé une Décision qui assumait une compétence *in rem* sur les artefacts récupérés par RMST en 1993, tout comme sur l'épave même, et a déclaré que RMST est le sauveteur-non-dessaisi de l'épave et du lieu de l'épave. Id. RMST est resté le sauveteur-non-dessaisi de l'épave du Titanic jusqu'aujourd'hui.

23. RMST a mené des opérations ultérieures de sauvetage au lieu de l'épave du Titanic en 1994, 1996, 1998, 2000 et 2004 et a récupéré plus de 3.000 artefacts supplémentaires (les artefacts récupérés en 1993, 1994, 1996, 1998, 2000 et 2004 seront nommés ci-après « les Artefacts américains » ou « la Collection américaine »). RMST a mené une expédition de recherche supplémentaire à l'épave en 2010, mais il n'a récupéré aucun artefact.

24. La Cour EDVA a une compétence *in rem* sur les Artefacts américains ; elle n'a pas de compétence sur les Artefacts français.

## III. L'attribution du titre concernant les Artefacts français a été inconditionnelle

25. En conformité avec la loi française, le Procès-verbal constitue une décision administrative légalement applicable par laquelle le titre légal sur les Artefacts français a été transféré à RMST.

26. Le transfert du titre à RMST a été inconditionnel.

27. Le titre visant les Artefacts français est libre de tout privilège ou charge ; aucune partie, à l'exception de RMST, n'a aucun intérêt légal en ce qui concerne ces artefacts.

28. La France n'a jamais eu d'intérêts bénéficiaires visant les Artefacts français.

## CHEF D'ACCUSATION I
## JUGEMENT DÉCLARATOIRE

29. Le Demandeur ré-allègue et introduit les paragraphes 1-28 de la présente Plainte, tel que précisé dans ce Chef d'accusation I.

30. Le Demandeur introduit le présent motif à l'encontre du Défendeur, demandant une déclaration selon laquelle la France et toutes les agences du Gouvernement Français n'ont aucun intérêt dans les Artefacts français.

31. Il y a une dispute substantielle et permanente entre le Demandeur et le Défendeur concernant la validité du titre visant les Artefacts français ; une déclaration des droits est nécessaire et adéquate, pour établir le fait que la France n'a aucun intérêt dans les Artefacts français. <u>Voir l'Annexe D</u>.

## DEMANDE DE RÉPARATION

PAR CONSÉQUENT, le Demandeur requiert un jugement à l'encontre du Défendeur, comme suit :

(a) Un jugement déclaratoire, en conformité avec la Règle sur la faillite 7001(9), conformément auquel la France et toutes les agences du Gouvernement Français n'ont aucun intérêt dans les Artefacts français ; ou

(b) Alternativement, une décision, en conformité avec la Règle sur la faillite 7001(2), sur la validité, la priorité ou l'étendue de tout intérêt de la France visant les Artefacts français ; et

(c) L'octroi au Demandeur de toutes les autres réparations légales et équitables que la Cour juge juste et appropriées.

NELSON MULLINS RILEY
& SCARBORUOUGH LLP

Par /s/ *Daniel F. Blanks*
Daniel F. Blanks (No. Barreau de Floride 88957)
Lee D. Wedekind, III (No. Barreau de Floride 670588)
50 N. Laura Street, Appartement 4100
Jacksonville, Floride 32202
(904) 665-3656 (direct)
(904) 665-3699 (fax)
daniel.blanks@nelsonmullins.com
lee.wedekind@nelsonmullins.com

*Avocat du Demandeur, RMS Titanic, Inc.*

~ #4813-4833-1829 v.4 ~

Affaire 3:16-ap-00183-PMG  Doc 1-1 Déposée le  17/08/16 Page 1 de 19

# PIÈCE A

[écriture illisible] télécopieur Xerox 7020 ; 8-16-88 ; 1:18 PM ;    2038888724

MER No. 87/1210589 Affaire 3:16-bk-02230-PMG Doc 73-1 Déposée le07/06/16 Page 2 de 19 ;# 2

Affaire [écriture illisible] Déposée le08/17/16 Page 2 de 19 [cachet]

Conseil Britannique des Transports Maritimes, Londres

| | |
|---|---|
| 1. Place et date<br><br>PARIS, 24 JUIN 1987 | LA CONFÉRENCE MARITIME BALTIQUE ET INTERNATIONALE<br>CHARTE-PARTIE À TEMPS UNIFORME POUR LES NAVIRES DE SERVICE OFFSHORE<br>NOM DE CODE: «TEMPS D'APPROVISIONNEMENT»<br><div align="right">PARTIE 1</div> |
| 2. Armateurs / Affréteur-transporteur / Place d'affaires<br>IFREMER, ci-après dénommés les ARMATEURS ou IFREMER<br>66, avenue d'IENA<br>75116- PARIS | 3. Affréteur / Place d'affaires<br>OCEANIC   RESEARH   AND EXPLORATION LTD<br>28 IRISH TOWN<br>GIBRALTAR |
| 3. Nome du Navire<br>NADIR SURFACE VESSEL ensemble avec<br>- NAUTILE SUBMERSIBLE (-6000m)<br>-ROBIN (ROV)<br>NAVIS (système de positionnement) | 5. Date de livraison (Cl. 2(A))<br>8 juillet 1987 |
| | 6. Date d'annulation (Cl. 2(A))<br>N'EST PAS APPLICABLE |
| 7. Port ou lieu de livraison (Cl. 2(A))<br><br>TOULON LA SEYNE (FRANCE) | 8. Port ou lieu de restitution (Cl. [écriture illisible] (A))<br>FORT DE FRANCE (MARTINIQUE) |
| 9. Période de loyer<br>54 jours | 10. Prolongation de la période de loyer (optionnel) (Cl. 1(B))<br>17 jours avec préavis écrit donné à IFREMER avant le 10 août 1987 |
| 11. Limites de négociation (Cl. 3(A))<br>OCÉAN ATLANTIQUE NORD ET LA MER MÉDITERRANÉENNE OUEST | |
| 12. Emploi des Navires limité à (indiquer la nature des services) (Cl. 3(A)<br>SUBMERSION SUR HMS TITANIC AFIN DE PROMOUVOIR L'ENQUÊTE DE L'ÉPAVE ET DE RÉCUPÉRER LES OBJETS DU TITANIC | |
| 13. Loyer (Cl. 7(A))<br><br>VOIR ARTICLE 24 | 14. Paiement du loyer (indiquer monnaie, mode et lieu de paiement : [écriture illisible] et compte bancaire) (Cl. 7(A))<br>Francs   Français;   Lettre   de   crédit irrévocable en faveur d'IFREMER<br>Crédit Lyonnais, Agence Ligne ENTREPRISES |

| | |
|---|---|
| | 75008 - PARIS, 55 CHAMPS ELYSEES ACCOUNT No 2335 A |
| 15. Frais de mobilisation (montant forfaitaire) (Cl. 2(B))<br><br>inclus | 16. Port ou lieu de livraison (Mobilisation) (Cl. 2(B))<br>TOULON (LA SEYNE) FRANCE |
| 17. Frais de démobilisation (montant forfaitaire) (Cl. 2(B))<br><br>incus | 18. Nombre de jours d'avis de restitution<br><br>n'est pas applicable ; voir encadré 10 |
| 19. Résiliation anticipée de l'affrètement (indiquer nombre de mois de loyer à payer) (Cl. ([écriture illisible] (D))<br><br>N'EST PAS APPLICABLE | 20. Nombre de mois [écriture illisible] de résiliation anticipée (Cl. ([écriture illisible] (D))<br><br>N'EST PAS APPLICABLE |
| 21. Repas (indiquer le tarif nominal convenu) (Cl. 9(I))<br>Gratuit | 22. Hébergement de passagers (indiquer le tarif nominal convenu) (Cl. 9(I))<br>Gratuit |
| 23. Port ou lieu d'amarrage à sec (Cl. 11(O))<br>SANS IMPORTANCE | 24. Guerre (à compléter uniquement si sous clause (C) convenue (Cl. 22)<br>VOIR ARTICLE 13 |
| 25. Sous-louer (indiquer montant d'augmentation du loyer de Charte) (Cl. 20(B))<br>VOIR ARTICLE 12 | 26. Lieu de l'arbitrage (seulement à remplir si autre lieu que Londres convenue) (Cl. 27)<br>LONDON |
| 27. Nombre de clauses supplémentaires dispositions spéciales souveraines, si convenu<br>1 à 24<br>Il est mutuellement convenu que le présent Contrat sera exécuté sous réserve des conditions énoncées dans la Charte qui comprend la Partie I, y compris des clauses supplémentaires si convenu et déclaré dans l'encadré 27 et la partie II ainsi que l'annexe A et l'annexe B annexé à la présente Charte. En cas de conflit de conditions, les dispositions de la Partie I prévaudront sur celles de la Partie II et de l'Annexe A et de l'Annexe B et toutes autres. | |
| [écriture illisible]<br>document incorporé par renvoi dans le présent document<br>les dispositions de la Partie I prévaudront sur celles de l'Annexe B | [écriture illisible]<br>En cas de conflit de conditions, les dispositions de la Partie II et de l'Annexe A et |

Maritimes  Transports  des  internationale  Conférence  la  et  Copenhague  Émis en décembre 1975

PARTIE II

«TEMPS D'APPROVISIONNEMENT» Charte-Partie à temps uniforme pour Les Navires de Service Offshore

## 1. Période

(A) Les Armateurs (écriture illisible) et les Affréteurs louent le Navire décrit à l'Annexe A pour la période indiquée dans l'encadré 9 à partir du moment où le Navire est livré aux Affréteurs.

(B) Les Affréteurs ont (écriture illisible) sous réserve de Clause 7 (D) d'étendre la Charte en continuation directe pour la période indiquée dans l'encadré 10, mais une telle option doit être décidée 20 jours avant l'expiration de la période d'affrètement.

## 2. Livraison

(A) Sous réserve de la sous clause (écriture illisible) de la présente Clause et de la Clause 21 de ceci, le Navire sera délivré par les Armateurs et accepté par les Affréteurs entre la date indiquée dans l'encadré et la date indiquée dans l'encadré (écriture illisible) (ci-après dénommée date d'annulation dans le port ou le lieu indiqués dans l'encadré (écriture illisible) dans une telle (écriture illisible) où le Navire peut (écriture illisible) que les Affréteurs peuvent diriger. Les Armateurs ne sont pas responsables des retards de livraison résultant de grèves, de lock-out ou (écriture illisible) ou de contrainte de travail, partielle ou générale.

## Mobilisation

(B) i) Les Affréteurs paient une somme forfaitaire au montant indiqué dans l'encadré (écriture illisible) sans escompte par voie de frais de mobilisation en contrepartie des Armateurs qui délivre au port ou au lieu indiqué dans l'Encadré (écriture illisible). La Charte doit être payée à 50% au début du voyage jusqu'au port de livraison, qui doit être non retournable soit le Navire perdu ou non perdu et le solde à l'arrivée au port de livraison.

(Ii) Si les Armateurs acceptent la charge de chargement et de transport du Navire et entreprennent tout autre service pour les Affréteurs sur le trajet jusqu'au port de livraison du port de remise, les conditions

et indemnités de cette Charte-partie s'appliquent à ce chargement, transport et / ou autre service exactement comme s'ils avaient été exécutés pendant la période de validité de la Charte, sauf que tout fret forfaitaire convenu à cet égard sera payable à l'expédition ou au commencement du service, selon le cas; soit le Navire ou les marchandises perdus ou non perdus.

## Annulation

(C) À tout moment, au plus tard sept jours avant la date d'annulation indiquée dans l'Encadré 5, les Armateurs peuvent aviser par écrit les Affréteurs qu'ils ne pourront pas livrer le Navire avant la date d'annulation mais livreront le Navire par la date qui peut être (écriture illisible). Les Affréteurs peuvent, dans les quarante-huit heures suivant la réception de cet avis, aviser par écrit les Armateurs d'annuler la Charte-partie, auquel cas la présente Charte-partie prendra fin à la condition que l'autre partie soit responsable envers l'autre pour les pertes encourues en raison de la non-livraison du Navire ou l'annulation de la Partie Charte.
Si les Affréteurs ne donnent pas un tel préavis que la (écriture illisible) l'avis du Propriétaire est substitué à la date d'annulation pour tous les buts de la Charte-partie.

## 3. Emploi

A) Le Navire (écriture illisible) doit être employé dans des activités légales offshore restreintes à la (écriture illisible) établi dans l'Encadré 12 et dans voyages entre (écriture illisible) ou lieu et tout endroit ou en mer (écriture illisible) ou le Navire peut (écriture illisible) dans les limites de négociation indiquées dans l'Encadré (écriture illisible) qui ne peut en aucun cas être dépassée sans accord préalable et adaptation de la Charte et (écriture illisible) à convenir et établi dans l'Encadré 27. Si (écriture illisible) les Affréteurs ne garantissent pas la sécurité d'un tel endroit (écriture illisible) mais agissent avec prudence (écriture illisible) au Navire comme si le Navire était leur propre propriété et compte tenu de ses capacités et de la nature de l'emploi. Les Affréteurs seront responsables de toute perte ou dommage subi par le Navire en raison de la condition de (écriture illisible) ou de l'unité en mer (offshore).

## 4. Les Armateurs à fournir

(A) Les Armateurs doivent fournir et payer pour tous (écriture illisible) cette partie de la Charte sont expressément payables par les Affréteurs et les frais d'entretien de la coque et de la machinerie du Navire pendant son emploi.

## Entretien du Navire

B) Les Armateurs (écriture illisible) qui, pendant toute la durée de la présente Charte, auront (écriture illisible) des mesures raisonnables pour maintenir le Navire (écriture illisible) la coque et la machinerie ou pour rétablir le Navire comme nécessaire à cette fin conformément aux dispositions de Clause (écriture illisible).

## 5. Les Affréteurs à fournir

Les Affréteurs fournissent et paient tous les carburants et lubrifiants et (écriture illisible) de celui-ci y compris les machines auxiliaires et le combustible de cuisine (écriture illisible) (qu'ils soient obligatoires ou (écriture illisible) en relation avec l'entreprise des Armateurs. (écriture illisible) taxes consulaires ces (écriture illisible) au Capitaine, aux Officiers et à l'Equipage) (écriture illisible) agences et commissions encouru par l'Entreprise des Affréteurs frais pour la sécurité des gardiens, frais (écriture illisible) et l'extermination de la vermine (écriture illisible).

Les unités offshore ou nécessités par les exigences sociales ou les autorités portuaires et toutes les cordes, élingues et coureurs spéciaux (y compris les tuyaux d'évacuation des cargaisons en vrac) effectivement utilisés pour le chargement ou le déchargement. Les Affréteurs doivent également fournir et payer (écriture illisible) les droits d'importation, y compris les coûts liés à l'établissement des frais d'expédition temporaires ou permanents (écriture illisible), frais de dédouanement tant pour le Navire que pour l'équipement aussi spécial (écriture illisible) aux plates-formes offshore, câbles (écriture illisible) lignes de ressorts, élingues etc. (écriture illisible) travaux offshore tous les tuyaux de déchargement alimentant les plates-formes (écriture illisible) raccords et adaptateurs de tuyaux, bouteilles d'oxygène / acétylène de recharge, (écriture illisible) électrodes d'alimentation utilisées pour les travaux offshore.

## 6. Soutes

Sauf accord contraire, le Navire sera livré avec des soutes et des lubrifiants à bord et livré avec au moins des soutes suffisantes pour atteindre la prochaine étape d'avitaillement sur la route du prochain port d'escale des Navires. Les Affréteurs au moment de la livraison et les Armateurs au moment de la remise prendront la relève et paieront les soutes et les lubrifiants à bord au moment de l'installation du contrat en cours (écriture illisible) au moment de la livraison et de la remise.

## 7. Loyer

(A) Les Affréteurs paieront comme Loyer du Navire au taux indiqué dans l'Encadré 13 par jour ou une partie de celui-ci à partir du moment où le Navire sera livré aux Affréteurs jusqu'à l'expiration ou la résiliation anticipée de la Charte- partie, ce loyer étant basée sur une complémentaire, du Capitaine, des Officiers et de l'Equipage aux taux en vigueur à payer. Paiement du loyer sera fait en espèces de la manière prescrite dans l'encadré (écriture illisible) sans escompte, tous les 30 jours, à l'avance. Le (écriture illisible) paiement à effectuer le jour de la livraison du Navire aux Affréteurs (écriture illisible), de paiement les Armateurs auront le droit de mettre fin à la présente Charte et de retirer le Navire du service des Affréteurs sans être obligés de noter aucune protestation ou faire une demande à aucun tribunal et sans autre formalité que ce soit et sans préjudice de toute réclamation que les Armateurs pourraient avoir sur les Affréteurs en vertu de la Charte. Si le Navire est perdu ou absent, le loyer cessera à compter de la date où elle a été perdue. Si la date de la perte ne peut être établie, le loyer sera payé à compter de la date de la dernière déclaration du Navire jusqu'à la date calculée d'arrivée du Navire à sa destination. Toute loyer payée à l'avance sera ajustée en conséquence.

(B) Les Armateurs ont le droit d'ajouter 1 (écriture illisible) par mois d'intérêt si le loyer de la Charte n'est pas reçu 15 jours suivant la date de paiement prévu au Clause 7 (A).

## Augmentation des coûts des Armateurs

(C) En cas de hausse des taux de l'un des Grands Officiers et de l'Équipage (selon les taux de rémunération officiellement négociés) prenant effet après la date de la Charte, le taux de Loyer sera augmenté selon la formule (écriture illisible) (1+ écriture illisible x P (100) (où (écriture illisible) taux de loyer après augmentation) avec (écriture illisible) taux de loyer en vigueur au moment de l'augmentation

de salaire (où P (écriture illisible) augmentation en pourcentage du coût des taux de rémunération, y compris à cet effet les heures supplémentaires, les primes, les gratifications, les congés, les cotisations sociales et les impôts et tous les paiements semblables).

(D) Si l'option prévue à la Sous-Cause 1 (écriture illisible) est exercée, le loyer doit être négociée entre les Armateurs et les Affréteurs sur la base des (écriture illisible) mentionnés dans l'Encadré 13, mais les changements dans les dépenses des Armateurs, y compris, mais sans s'y limiter, les salaires et les frais de fonctionnement à prendre en considération.

## 8. Remise

(A) Le Navire sera remis à l'expiration (écriture illisible) résiliation de la présente Charte-partie, en sans cargaison et dans (illisible) en bon ordre comme los de la livraison aux Affréteurs (écriture illisible) au port ou au lieu indiqué dans l'Encadré 8 ou si aucun lieu nommé à (écriture illisible) un endroit libre convenu entre les Armateurs et les Affréteurs et à défaut d'accord au lieu de livraison.

## <u>Démobilisation</u>

B) Les Affréteurs paieront une somme forfaitaire correspondant au montant indiquée dans l'Encadré 17, à titre de démobilisation, dont le montant sera (écriture illisible) à l'expiration ou à la résiliation anticipée de la Charte et ne sera pas remboursable soit le Navire perdu ou pas perdu.

(C) Les Affréteurs doivent (par (écriture illisible) aviser par écrit leur intention de remettre le Navire conformément à l'Encadré 18.

## Résiliation anticipée de la Charte

(D) Dans le cas où les Affréteurs abandonneraient toutes les opérations dans les limites de négociation spécifiées dans l'Encadré (écriture illisible) et à tout moment avant l'expiration de la présente Charte, ils pourraient résilier cette Charte en donnant moins de le nombre de mois préavis par écrit, comme indiqué dans l 'Encadré 20, aux Armateurs de leur intention de résilier et écriture illisible) aux Armateurs à cette résiliation une somme égale au nombre de mois de loyer indiqué dans l 'Encadré 19.

## Stationnement du Navire

(E) Les Affréteurs auront l'option de stationner le Navire à la totalité ou à une partie de la période de la Charte, auquel cas l'ordonnance de loyer (écriture illisible) ordre continuera d'être payée, mais si la période de cette (écriture illisible) excède 30 jours ils seront (écriture illisible) contre une telle loyer (écriture illisible) que les Armateurs auront épargnée en raison de la réduction des dépenses et (écriture illisible) à la suite de la stationnement du Navire (écriture illisible) étant donné que cette période de stationnement (écriture illisible) dépasse 30 jours.

## 9. (écriture illisible)

Toute la portée, la charge et les ponts du Navire seront à la disposition des Affréteurs recevant un espace adéquat et suffisant pour l'équipement du Capitaine, des Officiers et de l'Equipage du Navire, (écriture illisible) le mobilier, les provisions et les réserves. Les Affréteurs sont autorisés à transporter (écriture illisible) dans la mesure où des espaces sont disponibles et aux fins et dans le cadre des opérations et (écriture illisible).

PARTIE II

«TEMPS D'APPROVISIONNEMENT» Charte-Partie à temps uniforme pour Les Navires de Service Offshore

(i) cargaison légale, qu'il soit porté sur ou sous le pont;

(ii) explosifs et marchandises dangereuses, à condition qu'ils soient emballés et entreposés conformément à la réglementation nationale du Navire et / ou au Code des marchandises dangereuses IMCO et / ou à d'autres règlements pertinents. Les Affréteurs acceptent la responsabilité de toute dépense supplémentaire (y compris (écriture illisible) frais) encourus par les Armateurs relativement au transport de cette cargaison.

## 10 Capitaine et Equipage

(A) Le Capitaine doit s'acquitter promptement de ses fonctions et le Navire doit rendre tous les services raisonnables, dans les limites de ses capacités, jour et nuit, aux heures ou aux horaires que les Affréteurs peuvent raisonnablement exiger sans obligation des Affréteurs de payer les Armateurs ou le Capitaine, les Officiels ou l'Equipage du Navire tout paiement en trop ou en heures supplémentaires. Le Capitaine est placé sous les ordres des Affréteurs en ce qui concerne les agences d'emploi et autres arrangements et les Affréteurs doivent indemniser les Armateurs contre toutes les conséquences ou responsabilités découlant du respect de ces ordres. Les Affréteurs doivent (écriture illisible) le Capitaine avec toutes les instructions et les instructions de navigation, et le Capitaine et l'Ingénieur doivent tenir des registres complets et corrects accessibles aux Affréteurs ou à leurs agents. Le Capitaine doit signer des documents de cargaison sous la forme (écriture illisible), cependant ne pas être Factures (écriture illisible) mais des (écriture illisible) qui ne sont pas documents négociables et doivent être marqués comme tels. Les Affréteurs doivent indemniser les Armateurs contre toutes les conséquences et (écriture illisible) du Capitaine, des Officiers ou des agents qui signent sous la direction des Affréteurs les documents de cargaison ou autres documents incompatibles avec cette Charte-partie ou toute irrégularité dans les documents fournis par les Affréteurs ou leurs agents.

(B) L'Equipage du Navire, s'il est requis par les Affréteurs, connecte et déconnecte (écriture illisible) eau les tuyaux pneumatiques lorsqu'ils sont placés à bord du Navire au port ainsi qu'aux unités offshore,

exploiteront les machines à bord du Navire pour le chargement et décharger des cargaisons, et écharpe et accroche la cargaison au cours du chargement ou de déchargement aux côtés d'unités en mer. Si la réglementation portuaire des marins et / ou des syndicats ne permet pas à l'Equipage ou au Navire d'effectuer une quelconque de ces opérations, les Affréteurs prendront à leurs frais tout autre arrangement nécessaire sous la direction du Capitaine.

(C) Si les Affréteurs ont des raisons d'être insatisfaits de la conduite du Capitaine ou de tout Autre Ingénieur ou membre de l'Equipage, les Armateurs et le Capitaine sur réception des détails de cette plainte doivent rapidement enquêter sur la question et si, à leur avis, est nécessaire (écriture illisible) faire un changement dans la nomination.

## 11. Suspension du loyer

(A) Si, à la suite d'une faute de l'Equipage ou du Propriétaire (écriture illisible) de la grève du Capitaine, des Officiers et de l'Equipage (écriture illisible) de machines, de dommages à la coque ou à toute autre (écriture illisible), le Navire est empêché de travailler pendant une période de plus de 48 heures consécutives, le loyer sera payable au titre de la perte de temps excédant 48 heures et toute loyer payée à l'avance sera ajustée en conséquence, toutefois, cette loyer ne cessera pas si le Navire est empêché de travailler comme (écriture illisible) à la suite de:

(i) le transport de marchandises dangereuses

(ii) quarantaine ou le risque de mise en quarantaine, à moins causé par le Capitaine, les Officiers ou l'Equipage ayant communication avec le rivage dans une zone infectée non reliée à l'emploi du Navire et sans le consentement ou les instructions des Affréteurs;

(iii) dérogation à ses obligations en vertu de la Charte ou une exposition à des risques anormaux à la demande des Affréteurs;

(iv) travaillant aux côtés ou à proximité de toute unité offshore, à condition qu'il n'y ait pas eu grossier (écriture illisible) du devoir de la part du Capitaine, des Officiers ou de l'Equipage du Navire;

(v) détention suite à l'entrée dans le port ou (écriture illisible) ou (écriture illisible) dans les ports peu profonds ou à (écriture illisible) d'un accident de sa cargaison lorsque les frais résultant de cette (écriture illisible) seront pour le compte des Affréteurs, quelle qu'en soit la cause;

(vi) tout acte d'omission des Affréteurs, de leurs préposés ou agents;

(vii) (écriture illisible) des dommages causés par la glace.

**Responsabilité pour le Navire ne fonctionnant pas**

(C) Le Navire doit être amarré à sec à des intervalles réguliers pour être convenu d'un commun accord et tous les frais (écriture illisible) encourus et le carburant consommé pendant la période d'amarrage à sec pour le compte du Propriétaire. Les Affréteurs doivent mettre le Navire à la disposition du Propriétaire sans cargaison, au port ou à l'endroit désigné à la Encadré 13 ou au port le plus proche approprié à cet effet. Le Navire doit être en mer, à moins que le temps plein permis dans la Clause (écriture illisible) ne soit pas utilisé à partir du moment de l'arrivée au port d'amarrage (écriture illisible) sans cargaison et restera en loyer jusqu'à ce qu'il soit prêt à reprendre le service des Affréteurs à l'endroit où la période de détachement a commencé.

**(écriture illisible)**

(D) (écriture illisible) de la présente Clause, les Affréteurs accorderont aux Armateurs un maximum de 24 heures de loyer qui (écriture illisible), y compris amarrage à sec (écriture illisible) fonctions des Armateurs en vertu de la Clause (écriture illisible). Toute temps accumulée (écriture illisible) réparation sauvée mais non utilisée doit être payée aux Affréteurs (écriture illisible) et tout solde au moment de la remise (écriture illisible).

**13. Pièces exclues**

(A) Le Navire ne doit pas être commandé ni lié (écriture illisible) sans l'autorisation écrite des Armateurs: a) tout endroit où la fièvre ou les épidémies sont répandues ou auxquelles le Capitaine, les Officiers et les membres d'Equipage ne sont pas tenus par la loi de suivre le Navire; B) tout endroit glacé ou tout endroit où lumières (écriture illisible), des marques et des bouées sont ou sont susceptibles d'être retirés en raison de la glace à l'arrivée du Navire ou lorsque le Navire risque normalement de ne pas pouvoir en raison de la glace pour atteindre le lieu ou de sortir après avoir terminé ses opérations. Le Navire n'est pas obligé de forcer la glace, ni de suivre le brise-glace. Si, à cause de la glace, le Capitaine juge dangereux de rester dans le lieu de chargement ou de déchargement par crainte que le Navire ne soit gelé et / ou endommagé, il a la liberté de naviguer dans un endroit convenable et d'attendre les nouvelles instructions des Affréteurs.

(B) Si le Navire, avec ou sans l'autorisation du Propriétaire, entre dans le lieu mentionné sous Sous Clause (A) de la présente Clause, les Affréteurs seront responsables et indemniseront les Armateurs de toute perte de la vie et aux blessures personnelles du Capitaine du Propriétaire, de l'Équipage, des préposés et des autres personnes dans le Navire, ce qui entraîne une responsabilité légale de la part des Armateurs, quelle que soit la cause ou la conséquence de l'entrée dans ce lieu.

## 12. Remorquage. Manipulation d'Ancre

(A) À la livraison, le Navire sera équipé aux frais du Propriétaire des équipements décrits à l'Annexe B. Si, pendant la période de la Charte, ces équipements sont endommagés et inutilisables pendant les opérations, les Affréteurs les remplacent à leurs frais.

(B) Tout remorquage effectué par le Navire pour les Affréteurs sera assujetti aux Conditions de remorquage standard du Royaume-Uni.

## 15. Responsabilités et exceptions des Armateurs

(A) Les Armateurs sont responsables envers les Affréteurs des pertes ou des dommages subis par les Affréteurs en raison d'un manque de diligence de la part des Armateurs pour rendre le Navire en état de navigabilité et apte à ses fonctions en vertu de la Charte, mais la responsabilité des Armateurs À l'égard de toute non-exécution par le Navire de ses fonctions en vertu de la Charte se limitera à la suspension du loyer. Les Armateurs ne seront pas responsables envers les Affréteurs ou les Entrepreneurs des Affréteurs au titre de:

(i) toute perte de vie, blessure, perte ou dommage à un passager ou à toute autre personne (à l'exclusion du Capitaine ou d'un Officier ou d'un membre de l'Équipage du Navire) à bord du Navire à la demande ou avec la connaissance ou le consentement de Les Affréteurs ou toute perte ou dommage causé à la cargaison, quelle qu'en soit la cause, même si cette perte de vie, de blessure, de perte ou de dommage est due à tout acte ou omission du Capitaine ou de tout Officier ou membre de l'Équipage du Navire;

(ii) toute perte ou dommage causé aux unités en mer, directes ou indirectes, y compris, mais non limité à une perte consécutive, ou;

(iii) tout déversement réel ou potentiel, (écriture illisible) et / ou omission de tout polluant survenu dans le site offshore et toute pollution qui en résulterait, si tel est le cas;

(iv) toute perte de vie, de blessure, de perte ou de dommage causé à une personne sur ou à proximité d'unités en mer, à moins qu'elle ne soit due uniquement à un acte négligent ou à une omission du Capitaine ou de tout Officier ou membre de l'Équipage du Navire seulement dans le cours des travaux qui seraient normalement effectués par l'Équipage du Navire;

(v) perte, dommage ou retard résultant de grèves, de lock-out ou d'arrêts ou de contraintes de travail (y compris le Capitaine, les Officiers et l'Équipage), qu'ils soient partiels ou généraux.

## Responsabilités des Affréteurs

(B) Les Affréteurs seront responsables des pertes ou dommages causés au Navire ou aux Armateurs;

(i) par des marchandises verrouillées contrairement aux dispositions de la Charte ou par un avitaillement abusif ou négligent ou conduisant, arrimant ou déchargeant les marchandises;

(ii) par un acte ou une omission inapproprié ou négligent de leur part ou de celui de leurs préposés ou agents;

(iii) par un acte ou une omission inapproprié ou négligent de tout membre passager de l'Équipage d'une unité en mer ou d'une autre personne (qui n'est pas le Capitaine ou un Officier ou un membre de l'Équipage du Navire) à bord du Navire à la demande ou avec la connaissance ou le consentement des Affréteurs;

(iv) en raison d'un déversement réel ou potentiel (écriture illisible) et / ou de l'émission de tout polluant survenu dans l'offshore (écriture illisible) et de toute pollution qui en résulte, et ce, sans s'y limiter Le coût des mesures raisonnablement nécessaires pour prévenir ou atténuer les dommages causés par la pollution.

## Indemnités des Affréteurs

(C) Les Affréteurs doivent indemniser les Armateurs contre toute responsabilité (y compris les frais et dépens) à l'égard de toute perte de vie, blessure, dommage ou autre perte à la personne ou aux marchandises, quelle qu'en soit la cause, même si causée par la négligence ou la faute des préposés et mandataires des Armateurs pour:

(i) tout tierce partie possédant ou ayant un intérêt dans une unité en mer;

(ii) tout tierce partie à l'égard des marchandises transportées par le Navire;

(iii) toute tierce partie résultant d'une émission réelle ou potentielle (écriture illisible) et / ou d'émission de tout polluant, quelle qu'en soit la cause, survenu dans l'offshore (écriture illisible) et toute pollution qui en résulte, quelle qu'en soit la cause;

(iv) tout passager ou toute autre personne (à l'exclusion du Capitaine ou d'un Officier ou d'un membre de l'Équipage du Navire) à bord du Navire à la demande ou à la connaissance ou au consentement des Affréteurs;

(v) toute autre personne à proximité de l'unité offshore fournie (écriture illisible) de la présente Charte ne sera pas (écriture illisible) de quelque manière que ce soit diminuer les responsabilités des Affréteurs en sa qualité de propriétaire (écriture illisible) d'une telle unité a mer ou à toute autre capacité que celle des Affréteurs du Navire.

## Responsabilité du Capitaine, des Officiers et de l'Équipage

(Écriture illisible) Navire ne doit en aucun cas (écriture illisible)

PARTIE II

«TEMPS D'APPROVISIONNEMENT» Charte-Partie à temps uniforme pour Les Navires de Service Offshore aux Armateurs ou auxquels les Armateurs ont droit doit également (écriture illisible) protéger le Capitaine et l'Équipage du Navire agissant comme susdit pour l'application du présent Clause. Les Armateurs sont et sont réputés agir en qualité d'agent pour le compte et pour (écriture illisible) du Capitaine et de l'Équipage du Navire (écriture illisible) d'être parties au contrat contenu dans la Charte-partie et les Affréteurs conviennent à ne (écriture illisible) toute procédure contre eux à l'égard de ces questions.

**16. (écriture illisible) pour aider**

Le Navire a le droit, à tout moment, d'aider Navires et autres (écriture illisible) aux fins de sauver des vies ou des propriétés et, à cette fin, d'appeler dans un ou plusieurs ports pour le carburant et / ou d'autres fournitures et pour transporter du fret sur et / ou sous le pont.

**17. Sauvetage**
Sous réserve de la (écriture illisible)
L'assistance à d'autres Navires doit être (écriture illisible)

**18. Aide aux Affréteurs (écriture illisible)**

(Écriture illisible) toute autre disposition contenue dans la présente Charte (écriture illisible)
Le consentement des Armateurs pour aider toute (écriture illisible) unité en détresse possédée par ou (écriture illisible) les Affréteurs (écriture illisible) le Capitaine, les Officiers ou l'Équipage.
(i) Les Affréteurs seront responsables et indemniseront les Armateurs des paiements effectués en vertu de tout (écriture illisible) droit au Capitaine et à l'Équipage en (écriture illisible) de cette assistance;

(ii) Les Affréteurs seront responsables et rembourseront les Armateurs pour toute perte ou dommage (écriture illisible) par le Navire ou son équipement en raison de l'assistance et paieront également les dépenses du Propriétaire;

(iii) Les Affréteurs seront responsables de tout déversement réel ou potentiel, (écriture illisible) et / ou émission de tout polluant, quelle qu'en soit la cause, survenant au sein de l'offshore (écriture illisible) et toute pollution qui en résultera de là o ù jamais il peut (écriture illisible) y compris, mais sans s'y limiter, le coût des mesures raisonnables et nécessaires pour prévenir ou atténuer les dommages causés par la pollution et les Affréteurs doivent indemniser les Armateurs contre toute responsabilité, coût ou (écriture illisible) découlant de ce déversement réel ou potentiel (écriture illisible) et / ou émission.

(iv) Le Navire ne doit pas être hors-loyer à la suite d'une telle assistance ou (écriture illisible) ne doit pas compter sur le temps accordé en vertu de Sous Clause (D) ou de la Clause 11.

(v) Les Affréteurs doivent indemniser les Armateurs contre toute responsabilité, coût et / ou frais relatifs à toute perte de vie, blessure, dommage ou autre perte à la personne ou aux marchandises causés par cette assistance.

## 19. Droit de gage

Les Armateurs auront (écriture illisible) sur toutes les cargaisons pour toutes les réclamations contre les Affréteurs en vertu de la présente Charte et les Affréteurs auront un (écriture illisible) sur le Navire pour tous (écriture illisible) à l'avance et non gagné.

Les Affréteurs (écriture illisible) à continuer tout droit de gage ou (écriture illisible) qu'ils auront subi ou qu'ils pourraient avoir (écriture illisible) des Armateurs sur le Navire.

Les Affréteurs indemnisent et tiennent les Armateurs indemnes de tout droit de gage ou de quelque (écriture illisible) qui survienne sur le Navire pendant la période de la Charte alors qu'elle est sous le contrôle des Affréteurs et contre toute réclamation contre les Armateurs découlant de l'exploitation du Navire par les Affréteurs ou de toute négligence des Affréteurs vis-à-vis du Navire ou de son exploitation. Si le Navire est arrêté en raison de réclamations (écriture illisible) découlant de son opération aux termes des présentes par les Affréteurs, les Affréteurs prendront à leurs frais toutes les raisonnables (écriture illisible) pour s'assurer que dans un délai raisonnable le Navire est libéré et à leurs propres frais mis en liberté sous caution pour assurer la libération du Navire.

**20. Sous-louer**

(A) Les Affréteurs doivent avoir la (écriture illisible) de sous-louer le Navire à toute (écriture illisible) avec les Armateurs, sous réserve de l'approbation préalable du Propriétaire qui ne doit pas être refusée sans raison valable. (Écriture illisible) aux Armateurs, mais les Affréteurs originaux demeurent toujours responsables envers les Armateurs pour l'exécution de la Charte et les entrepreneurs de la personne ou de la compagnie (écriture illisible), cette sous-louer est réputée être des Entrepreneurs des Affréteurs à toutes fins de la présente Charte. Les Armateurs en font une condition (écriture illisible) que le loyer supplémentaire sera payé comme convenu entre les Affréteurs et les Armateurs en tenant compte de la nature et du service (écriture illisible) du Navire.

(B) Si le Navire est sous-loué ou prêt à entreprendre (écriture illisible) l'ancre (écriture illisible) et des opérations de remorquage liées à un équipement autre (écriture illisible) par les Affréteurs qu'un écrit quotidien (écriture illisible) à la Charte (écriture illisible) dans le montant indiqué à l'Encadré 25 ou (écriture illisible) doit être (écriture illisible) pour ces opérations jusqu'au retour aux fonctions normales pour les Affréteurs.

**21. Remplacement du Navire**

(Écriture illisible) à tout moment avant la date (écriture illisible) pendant la période de la Charte afin de remplacer le Navire nommé à l'Encadré (écriture illisible) par une autre Navire ou équipement (écriture illisible).

**22. Guerre**

(A) Le Navire, à moins que le consentement des Armateurs ne soit (écriture illisible) de ne pas être ordonné, ni continuer à un endroit ou sur un voyage, ni être utilisé sur un service qui l'amènera dans une zone qui est dangereuse en raison des actes de guerre, des hostilités de guerre, des actes de guerre, des actes de piraterie ou d'hostilité ou de malveillance (écriture illisible) contre ce ou tout autre Navire ou sa cargaison par une personne, un corps ou un État, quelle que soit un révolution, une guerre civile, un agitation civile ou un application du droit international, ni être exposé, dans une guerre, à des sanctions

(écriture illisible) par suite de l'imposition de sanctions, ni porter des marchandises qui pourraient de quelque manière que ce soit (écriture illisible) à toutes risques de (écriture illisible) capture, pénalités ou toute ingérence (écriture illisible) de quelque nature que ce soit du belligérant ou des combattants (écriture illisible) ou des parties ou par tout gouvernement ou souverain.

(B) Si le Navire approche ou peut être amené ou ordonné dans une telle zone (écriture illisible) de quelque manière que ce soit aux risques mentionnés (1), les Armateurs (écriture illisible) de temps en temps pour assurer (écriture illisible) au Navire (écriture illisible)  les risques susceptibles d'être impliqués ainsi (écriture illisible) les Affréteurs de faire un retour aux Armateurs (écriture illisible) sur demande et (2) (écriture illisible) pour toute perte de temps, y compris (écriture illisible) perdu en raison de la perte ou des blessures au Capitaine, aux Officiers ou à l'Équipage ou (écriture illisible) se rendent dans cette zone ou sont exposés à de tels risques.

(C) En cas de (écriture illisible) du Capitaine, d'Officiers et / ou d'Équipage ou le coût des provisions et / ou des provisions (écriture illisible) pont et / ou (écriture illisible) et / ou les primes d'assurance sont augmentées en raison ou pendant l'assistance de l'une des questions mentionnées à Sous Clause (A) (écriture illisible) à ajouter au loyer et payé par les affréteurs (écriture illisible) Compte tenu de ce compte étant (écriture illisible) mensuelle.

D) Le Navire doive avoir la liberté de se conformer aux ordres ou instructions de départ, d'arrivée (écriture illisible) que ce soit donnée par le Gouvernement (écriture illisible) ou toute autre (écriture illisible) agissant ou prétendant d'agir avec l'autorité d'un tel gouvernement ou d'une commission ou d'une personne (écriture illisible) d'assurance sur le Navire le droit de donner de telles ordres ou instructions.

(E) Dans le cas où la nation sous pavillon duquel le Navire navigue (écriture illisible) dans des hostilités de guerre, des opérations guerrières, une révolution ou une agitation civile et si par conséquent le Navire est empêché de remplir ses fonctions en vertu de la Charte, le Propriétaire et les Affréteurs peuvent annuler la Charte et, sauf convention contraire, le Navire est remis aux Armateurs au port ou à la destination ou, s'ils sont empêchés par les dispositions de Sous Clause A de l'atteindre ou (écriture illisible) à un port presque ouvert et sûr de l'option des Armateurs après le déchargement de toute cargaison à bord.

(F) Si, conformément aux dispositions de la présente Clause, quelque chose est fait ou n'est pas fait, ne pas être considéré comme un écart.

* Sous Clause (écriture illisible) est facultative et devrait être considérée comme supprimée, à moins d'être convenue conformément à l'Encadré 24.

## 23. Moyenne générale

Général Moyenne à ajuster selon les règles de York-Anvers 1974. Loyer à ne pas contribuer à la moyenne générale.

## 24. Clause de la responsabilité partagée en cas d'abordage

Si le Navire entre en collision avec un autre Navire à la suite de la négligence de l'autre Navire et de tout acte, négligence ou (écriture illisible) du Capitaine, du navigateur, du pilote ou des préposés des Armateurs à (écriture illisible) la gestion du Navire, Les Affréteurs indemnisent les Armateurs contre toute perte ou responsabilité à l'égard de l'autre (écriture illisible) ou de ses Armateurs dans la mesure où cette perte ou responsabilité représente une perte ou un dommage ou une réclamation quelconque des Armateurs de marchandises transportée en vertu de la présente Charte payée ou payable par l'autre Navire ou par ses Armateurs aux Armateurs (écriture illisible) des marchandises (écriture illisible) ou récupérée par l'autre Navire ou le navire non porteur (écriture illisible) ses Armateurs dans le cadre de leur réclamation contre le Navire ou les Armateurs. Les dispositions qui précèdent s'appliquent également lorsque les Armateurs exploitants ou les responsables d'un Navire ou d'un Navire ou d'objets autres que (écriture illisible) en plus des Navires en collision ou des objets sont (écriture illisible) d'une collision ou d'un contrat.

## 25. Modifications structurelles

Les Affréteurs auront l'option de faire à leurs frais des modifications structurelles au Navire avec le consentement écrit des Armateurs, mais à moins qu'il n'en soit convenu autrement, le Navire doit être remis réintégré à son état d'origine. Le Navire doit rester (écriture illisible) pendant toute période de ces modifications ou rétablissement. Les Armateurs ne seront en aucun cas responsables des conséquences découlant des Affréteurs qui ont effectué une telle modification ou rétablissement.

## 26. Définitions

¬ L'unité a mer (offshore) est définie, aux fins de la présente Charte, comme un Navire, une installation au large, une structure et / ou une unité mobile utilisé pour l'exploration, l'exploitation ou la production en mer.

¬Offshore (écriture illisible) ¬ est défini, aux fins de la présente Charte, comme la zone située à moins de trois miles nautiques d'une unité offshore à partir de laquelle les Armateurs sont priés de prendre leur Navire par les Affréteurs.

## 27. Arbitrage

La présente Charte sera régie par la loi anglaise et tout litige découlant de la présente Charte sera (écriture illisible) l'Arbitre désigné par les Armateurs et les Affréteurs (écriture illisible) et au cas où les Arbitres ne (écriture illisible) est la décision d'un Juge-arbitre d'être nommée par eux (écriture illisible), les Arbitres ou le Juge-arbitre pour être définitif et s'appliquer obligatoirement à les deux (écriture illisible)

Affaire 3:16-bk-02230-PMG Doc 73-1 Déposée le 06/07/16 Page 6 de 19

Affaire 3:16-ap-00183-PMG Doc 1-1 Déposée le 17/08/16 Page 6 de 19

-2-

## Entretien du Navire

(B) Les Armateurs s'engagent à ce que pendant toute la durée de la présente Charte ils prennent toutes les mesures raisonnables pour maintenir le Navire en état d'efficacité de la coque et les machines ou pour rétablir le Navire dans cet état.

(C) Les Armateurs doivent également fournir et payer tous les combustibles et lubrifiants et leur transport (y compris les machines auxiliaires et le combustible de cuisine), l'eau, les frais portuaires, le pilotage et les bateliers (obligatoires ou non), les timoniers, les cotisations lumière, le ballast solide, l'assistance au remorqueur, les frais de consulat, les redevances portuaires et autres cotisations et redevances, l'octroi de mer, les droits portuaires et de tonnage aux ports de livraison et de restitution, les coûts des agences et les frais de commission de sécurité ou d'autres gardiens, les frais de fumigation (y compris dératisation et extermination de la vermine) et de quarantaine (si occasionnée par la nature de la cargaison transportée ou du port visité pendant l'emploi en vertu de la présente Charte). Les Armateurs doivent également fournir et payer le chargement et le déchargement des cargaisons, à l'exception des objets visés à l'article 21 et pour tout le calage nécessaire, les montants et l'équipement d'étayage pour la sécurité des marchandises portuaires, tous les cordages (à l'exclusion de ceux requis pour les besoins ordinaires du Navire, l'amarrage à côté du port, mais y compris ceux qui sont nécessaires pour assurer l'accès aux unités en mer ou qui sont nécessaires par suite d'exigences spéciales des autorités portuaires) ainsi que toutes les cordes, élingues et coureurs spéciaux (y compris les tuyaux d'évacuation des cargaisons en vrac) effectivement utilisés pour le chargement et le déchargement. Les Armateurs doivent également fournir et payer pour les droits de douane, permis, droits à l'importation y compris le coût de l'établissement des obligations temporaires ou permanentes d'importation, les frais de dédouanement pour le Navire et / ou l'équipement, sauf pour les objets visés de la clause 21 , ainsi que des lignes d'amarrage spéciales pour les plateformes offshore, les vires, les nylons, les lignes de ressorts, les élingues etc ... utilisés pour les travaux offshore avec raccords et adaptateurs de tuyaux, recharger les bouteilles d'oxygène / acétylène et les électrodes d'alimentation pour les travaux au large.

## 5. SOUTES ET LUCRICANTS

Les Armateurs sont responsables de la fourniture et du paiement de tous les soutes et lubrifiants.

## 6. RESTITUTION

Le Navire sera restitué à l'expiration de la présente Charte-Partie.

ENVOYÉE PAR télécopieur Xerox 7020 ; 8-16-88 ; 1:17 PM ;

Affaire 3:16-bk-02230-PMG Doc 73-1 Déposée le 06/07/16 Page 7 de 19        ;# 5

Affaire 3:16-ap-00183-PMG Doc 1-1 Déposée le 17/08/16 Page 7 de 19

-3-

## 7. L'ESPACE DU NAVIRE

Toute la portée, la charge et les ponts du Navire seront à la disposition des Affréteurs en réservant un espace adéquat et suffisant pour le Capitaine du Navire, les Officiers, l'Équipage, l'équipement, les vêtements, le mobilier, les provisions et les réserves. Les Affréteurs auront le droit de porter, dans la mesure où des espaces sont disponibles et à leurs fins dans le cadre de leurs opérations:

(i) Des passagers, y compris des équipes de télévision et de tournage, et, à ces fins, utiliser le logement disponible du Navire qui n'est pas utilisé pendant le voyage par le Navire et l'Équipage. Les Armateurs doivent fournir les dispositions et les conditions appropriées pour ces passagers.

ii) Des marchandises légales transportées sur ou sous pont.

iii) Des explosifs et marchandises dangereuses, à condition qu'ils soient emballés et arrimés conformément à la réglementation nationale du Navire et / ou au Code des marchandises dangereuses IMCO et / ou à d'autres règlements pertinents. Les Affréteurs acceptent responsabilité de toute dépense supplémentaire (y compris les frais de remise en état) encourus par les Armateurs en ce qui concerne le transport de cette cargaison.

(iv) Les PROPRIETAIRES doivent permettre aux passagers, y compris le personnel de tournage ou télévision, de se déplacer à bord du "Nautile", mais ces passagers seront transportés à leurs propres risques et soumis à une évaluation médicale satisfaisante.

## 8. CAPITAINE ET ÉQUIPAGE

(A) Le Capitaine doit s'acquitter promptement de ses fonctions et le Navire doit rendre tous les services raisonnables qui sont à sa portée, jour et nuit, aux heures et aux horaires que les Affréteurs peuvent raisonnablement exiger sans obligation des Affréteurs de payer les Armateurs ou le Capitaine, les Officiels ou l'Equipage du Navire tout paiement en trop ou en heures supplémentaires. Sous réserve de l'article 18.2 ci-après, le Capitaine est placé sous les ordres des Affréteurs en ce qui concerne les agences d'emploi et autres arrangements. Le Capitaine et l'Ingénieur doivent tenir des registres complets et corrects accessibles aux Affréteurs ou à leurs agents. Le Capitaine doit signer des documents de cargaison sous la forme présentée.

(B) Si les Affréteurs ont des raisons d'être insatisfaits de la conduite du Capitaine ou de tout Officier, Ingénieur ou membre de l'Équipage, les Armateurs et le Capitaine en recevant les détails de la plainte doivent rapidement enquêter sur la question et, s'ils estiment il est nécessaire et faisable de faire un changement dans la nomination.

ENVOYÉE PAR télécopieur [écriture illisible]

Affaire 3:16-bk-02230-PMG Doc 73-1 Déposée le 06/07/16 Page 8 de 19          ;# 6

Affaire 3:16-ap-00183-PMG Doc 1-1 Déposée le 17/08/16 Page 8 de 19

-4-

Aux fins de la présente clause, les Affréteurs traitent uniquement avec le représentant principal des Armateurs en mer et les Armateurs mettent en œuvre les souhaits des Affréteurs concernant le Capitaine, l'Ingénieur et l'Équipage en relation avec cette clause.

## 9. DÉROUTEMENT À ASSISTER

Le Navire a le droit, en tout temps, d'aider les Navires et autres biens en détresse, à se départir pour sauver des vies ou des biens et, à cette fin, de faire escale dans un port ou ports pour combustible et / ou et de transporter du fret sur ou sous le pont. Ce déroutement est considéré comme une période de loyer.

## 10. SAUVETAGE

Tous les travaux de sauvetage (autres que ceux prévus et découlant des activités décrites à l'Encadré 12) et l'assistance à d'autres Navires sont à l'avantage égal des Armateurs et des Affréteurs après déduction de la proportion du Capitaine et de l'Équipage et toutes les dépenses légales et autres, y compris le loyer

payé en vertu de la Charte pour le temps perdu dans le sauvetage, les réparations des dommages et du pétrole consommé. Les Affréteurs sont tenus par toutes les mesures prises par les Armateurs afin de garantir le paiement du sauvetage et de fixer leur montant. Les Affréteurs conviennent et s'ils en ont le contrôle, doivent fait en sorte que toute l'aide de sauvetage à moins que des conditions alternatives ne soient convenues avec les propriétaires, sera selon les modalités du formulaire ouvert de Lloyd "Pas de résultat - pas de paiement".

Les Armateurs indemnisent et tiennent à couvert les Affréteurs de toute réclamation pour sauvetage faite par le Capitaine, tout préposé de l'Équipage ou agent d'Armateur. En cas de conflit entre cette clause et la clause 21, celle-ci prévaudra.

## 11. PRIVILÈGE

Les Armateurs ont un privilège sur toutes les cargaisons pour toutes les réclamations contre les Affréteurs en vertu de la présente Charte et les Affréteurs ont un privilège sur le Navire pour toutes les sommes payées à l'avance et non gagné, Affréteurs ne souffrira pas, ne permettent pas de continuer toutes privilèges ou charges encourus par eux ou leurs agents, qui pourraient avoir priorité sur le titre et les intérêts des Armateurs dans le bâtiment.

Affaire 3:16-bk-02230-PMG  Doc 73-1 Déposée le 06/07/16 Page 9 de 19              ;# 7

Affaire 3:16-ap-00183-PMG  Doc 1-1 Déposée le 08/17/16 Page 9 de 19

ENVOYÉE PAR télécopieur Xerox 7020 ; 8-16-88 ; 1:18 PM ;              2038669724

-5-

Les Affréteurs doivent indemniser et tenir les Armateurs à couvert contre tout privilège ou toute autre nature découlant du Navire pendant la période de la Charte alors qu'elle est sous le contrôle des Affréteurs et contre toute réclamation contre les Armateurs découlant de l'exploitation du Vassal par les Affréteurs ou de tout négligence des Affréteurs en relation au Navire ou à son exploitation. Si le Vassal est arrêté en raison de réclamations ou de privilèges découlant de son exploitation par les Affréteurs, les Affréteurs prendront à leurs propres frais toutes les mesures raisonnables pour obtenir que, dans un délai raisonnable, le Navire soit libéré et à ses propres frais, sécurité du Navire.

## 12. SOUS-LOUER

Sous réserve de l'approbation écrite préalable des Armateurs, les Affréteurs sont autorisés à sous-louer le navire à toute personne ou compagnie n'étant pas en concurrence avec les Armateurs.

## 13. GUERRE

(A) Le Navire, à moins que le consentement des Armateurs ne soit obtenu d'abord, ne doit pas être commandé, ni continué à un endroit ou un voyage, ni être utilisé sur aucun service qui la conduira dans une zone qui est dangereuse à la suite des faites de guerre, de guerre, d'hostilités, des opérations de guerre, d'actes de piraterie ou d'hostilité ou d'atteintes malveillantes contre ceci ou de tout autre Navire ou de sa cargaison par une personne, un organisme ou un État quelconque, révolution, guerre civile, agitation populaire ou l'opération du droit international, ni être exposé de quelque manière que ce soit à des risques ou à des sanctions quelconques consécutifs à l'imposition de sanctions.

.../...

ENVOYÉE PAR télécopieur Xerox 7020 ; 8-16-88 ; 1:19 PM ;

Affaire 3:16-bk-02230-PMG Doc 73-1 Déposée le 06/07/16 Page 10 de 19          ;# 8

Affaire 3:16-ap-00183-PMG Doc 1-1 Déposée le 17/08/16 Page 10 de 19

-6-

(B) Si, à la suite de ces actes ou opérations de guerre sous mentionnés, le navire est empêché d'exercer ses fonctions en vertu de la présente partie, les Armateurs et les Affréteurs peuvent annuler la Charte et, sauf convention contraire, le Navire doit être renvoyé à Les Armateurs dans le port de restitution défini dans l'encadré 8.

Les Armateurs ne seront pas responsables des conséquences de cette résiliation anticipée de la Charte et le loyer de Charte totale définie dans l'encadré 13 sera versé aux Armateurs.

## 14. MOYENNE GÉNÉRALE

Moyenne générale à ajuster selon les Règles d'York et d'Anvers, 1974. Loyer à ne pas contribuer à la Moyenne Générale.

## 15. CLAUSE DE LA RESPONSABILITÉ PARTAGÉE EN CAS D'ABORDAGE

Si le Navire entre en collision avec un autre navire en raison de la négligence de l'autre navire et de tout acte, négligence ou défaut du Capitaine, du marin, du pilote ou des préposés des Armateurs dans la navigation ou la gestion du Navire, les Affréteurs indemnisent les Armateurs contre toute perte ou responsabilité envers l'autre ou navire non porteur ou son Armateurs dans la mesure où cette perte ou responsabilité représente la perte ou le dommage ou toute réclamation quelconque des Armateurs de marchandises transportées en vertu de la présente Charte payés ou payables par l'autre ou navire non porteur ou par son Armateurs aux Armateurs desdits biens et compensation, récupérés ou recouvrés par l'autre ou navire non porteur ou par ses Armateurs dans le cadre de leur réclamation contre le Navire ou le Navire Les Armateurs. Les dispositions qui précèdent s'appliquent également lorsque les Armateurs, les exploitants ou les responsables des tout navire ou navires ou autres objets que les navires ou objets en collision sont en défaut à l'égard d'une collision ou d'un contrat.

## 16. MODIFICATIONS STRUCTURELLES

Les Affréteurs auront la possibilité de faire à leurs frais des modifications structurelles au Navire avec le consentement écrit des Armateurs mais à moins qu'il n'en soit convenu autrement, le Navire doit être remis rétabli à son état initial. Le Navire doit rester en loyer pendant toute période de ces modifications ou rétablissements.

## 17. ARBITRAGE

Tout litige découlant de la présente Charte qui ne peut être réglé de manière amiable sera renvoyé à l'arbitrage à Londres conformément aux règles et règlements de l'International Changer of Commerce de LONDRES.

La présente Charte sera régie par le droit anglais.

## 18. LA POSITION DE L'ÉPAVE DU TITANIQUE

Les Armateurs garantissent qu'ils ont une connaissance exacte de la position exacte de l'épave "TITANIC" et s'engagent à amener le Navire à cette position et à plonger leur submersible sur le site TITANIC (tel que défini dans la Clause 19. Les Armateurs s'engagent à fournir la position exacte du TITANIC aux affréteurs. Les Affréteurs ne divulgueront pas inutilement la position DE L'ÉPAVE DU TITANIQUE à un tiers.

## 19. DÉFINITION DU "SITE"

"LE SITE" est:

1. Les sections de proue et de poupe de "RMS TITANIC".

2. La zone qui se trouve à un demi mille marin de chaque côté de la ligne, de l'avant de la section de proue à l'arrière de la section de poupe, étendue un mille nautique à l'arrière de la section de poupe.

## 20. RÉCUPÉRATION D'OBJETS

20.1. Les ARMATEURS remettront sans délai aux Affréteurs tous les objets collectés sur ou du site Titanic pendant l'exécution de cette Charte-partie. Les ARMATEURS renoncent à tous les droits de

propriété sur les objets recueillis pendant l'expédition effectuée en vertu de cette Charte, tant pour eux-mêmes que pour le compte du Capitaine, des Officiers, de l'Équipage, des préposés et des agents, à condition que tous les paiements définis à l'article 24 soient faits aux ARMATEURS.

En particulier, les Affréteurs ne peuvent utiliser les coffres forts que si le terme correspondant est versé à IFREMER.

20.2 En raison du fait que les objets recueillis par les ARMATEURS pour le compte des Affréteurs ne sont pas la propriété des ARMATEURS, les Affréteurs indemnisent et tiennent à couvert les ARMATEURS contre toute réclamation relative au recouvert des objets susmentionnés excepté toujours les réclamations faites par tout capitaine, équipage, agents, préposés ou employés des ARMATEURS.

ENVOYÉE PAR télécopieur Xerox 7020 ; 8-16-88 ; 1:20 PM ;

Affaire 3:16-bk-02230-PMG  Doc 73-1 Déposée le 06/07/16 Page 11 de 19          ;# 10

Affaire 3:16-ap-00183-PMG  Doc 1-1 Déposée le 17/08/16 Page 11 de 19

-8-

Les Affréteurs rembourseront les ARMATEURS de tous les frais juridiques engagés par les ARMATEURS dans le cadre de ces réclamations.

Les Affréteurs ne doivent pas vendre les objets collectés par les ARMATEURS, mais les utilisent uniquement à des fins d'exposition.

20.3 Les ARMATEURS ne sont pas responsables du processus de conditionnement et de conservation des objets à bord du Navire.

20.4 Les ARMATEURS auront le droit de recueillir quelques échantillons spécifiques de l'épave Titanic à des fins expérimentales scientifiques dans le cadre de la recherche sur la corrosion et / ou la recherche biologique.

La sélection des échantillons et la collecte de ces échantillons seront convenues d'un commun accord entre le représentant des ARMATEURS et les Affréteurs sur le Navire et la collecte de ces échantillons ne doit en aucun cas nuire à l'utilisation du Navire par les Affréteurs.

## 21. DROITS AUDIO-VISUELS ET AUTRES DROITS COMMERCIAUX

21.1. Le titulaire aura en tout temps le droit de bénéficier de tous les médias, les droits audiovisuels, de télévision concernant et provenant des activités de la charte.

21.2. Tous les logos figurant sur le Navire demeureront tels quels et là où ils se trouvent, cependant les affréteurs auront le droit de placer tels logos supplémentaires qu'ils désirent sur le navire et / ou l'équipement auxiliaire dans la position qu'ils désirent, pourvu que ce positionnement ne doit pas interférer avec l'exploitation du navire ou de toute partie de celui-ci ou obscurcir les ARMATEURS ou autres logos ou noms actuellement sur le «navire» et ses équipements auxiliaires.

### 21.3 Arrangements de marchandisage pour les jouets et les modèles

Sous réserve des dispositions de la présente section, les Affréteurs conservent et bénéficient de tous droits de marchandisage et autres droits commerciaux relatifs aux activités de la Charte et découlant de ces activités. Les Affréteurs ont pleinement le droit d'autoriser et de patenter la production de modèles, de jouets et de représentations des bateaux et du matériel utilisés par l'IFREMER aux fins de la Charte-partie («des navires et l'équipement») pour le merchandising et le gain commercial dans le cadre de l'expédition de TITANIC de 1987.

L'IFREMER a droit à 5% du chiffre d'affaires total des ventes de jouets et des modèles représentant l'équipement de l'IFREMER.

Après le 31 août 1992, les Affréteurs ne pourront, sans le consentement écrit préalable des Armateurs, conclure de nouveaux contrats pour la commercialisation, la production et la vente des jouets, mais tous les contrats conclus par les Affréteurs avant cette date devront être exécuté jusqu'à l'expiration.

21.4 Les Affréteurs doivent informer les ARMATEURS de la préparation de tout film ou ouvrage relatif aux expéditions RMS TITANIC ou au site TITANIC.

## 22. EXPÉDITIONS FUTURES SUR LE SITE TITANIQUE

22.1 Si l'affréteur a l'intention de planifier des expéditions supplémentaires sur le site TITANIC pendant les années 1988 à 1992 inclus, l'affréteur informera les ARMATEURS de ses intentions avant le 31 janvier de l'année au cours de laquelle l'expédition aura lieu.

22.2. Si IFREMER sera contacté pendant les années 1988 à 1992 par une nouvelle entité sans prépaiement sur les sites TITANIC, IFREMER accorder un droit de premier refus à l'accord à le CHARTERER pour lui permettre de participer à un nouveau TITANIC expédition.

Le premier droit de refus doit être exercé par le CHARTERER dans les trois semaines suivant l'avis donné par écrit par l'IFREMER.

## 23. RESPONSABILITÉ

23.1. Les ARMATEURS garantissent que le navire est en état de navigabilité et convient dans tous les aspects à ses fonctions en vertu de cette Charte.

23.2. La gestion et l'exploitation du navire, les opérations de plongée et l'ensemble de la sécurité du navire, ainsi que toutes les dépenses et responsabilités découlant de ce qui suit sont à la seule responsabilité des ARMATEURS.

.../...

-10-

LES ARMATEURS sont seuls responsables des dommages et préjudices causés à tout Capitaine, équipage, préposé, agent ou employé des ARMATEURS ou de toute autre personne se trouvant à bord du Navire à leur demande et pour tous dommages ou pertes causés ou encourus par le navire ou d'autres biens des ARMATEURS ou des ARMATEURS leurs-même découlant de ou de toute manière liée à l'exécution des travaux en mer ou sous-marin en vertu du présent accord, quelle qu'en soit la cause. Sous réserve de Sous Clause 23.3 des présentes, les ARMATEURS sont responsables de tous les dommages et préjudices subis ou encourus en relation avec les réclamations faites par des tiers, à l'exception des journalistes, des compagnies de télévision et de toutes les personnes invitées à bord par les affréteurs et les ARMATEURS devront indemniser et tenir à couvert les affréteurs de toutes les réclamations pour de telles pertes, dommages, dépenses, coûts.

Aucune disposition de la présente clause ou de la charte-partie dans son ensemble ne peut être considérée comme transférant les responsabilités et responsabilités susmentionnées aux affréteurs.

Les ARMATEURS ne seront pas responsables des pertes ou dommages causés aux objets de l'épave de RMS TITANIC à partir du moment ou de la correction ou de la récupération par les ARMATEURS jusqu'à ce que ces objets soient remis aux affréteurs conformément à la clause 20.1.

23.3. Les ARMATEURS seront tenus responsables de tous les dommages causés par les dommages causés par les tiers, à l'exception des journalistes, des sociétés de télévision et de toutes les personnes invitées à bord par les Affréteurs, et les ARMATEURS devront indemniser les Affréteurs de toute responsabilité Réclamations pour de telles pertes, dommages, dépenses, coûts.

Aucune disposition de la présente clause ou de la Charte-partie dans son ensemble ne peut être considérée comme transférant les droits et obligations susmentionnés aux Affréteurs.

Les ARMATEURS ne seront toutefois pas responsables des pertes ou dommages causés aux objets de l'épave de RMS TITANIC à partir du moment de la correction ou de la récupération par les ARMATEURS jusqu'à ce que les objets soient remis aux Affréteurs conformément à la clause 20.1.

23.3. Les affréteurs sont responsables de toutes les pertes dommages et frais et réclamations résultant de décès ou de blessures corporelles à tout passager ou autre personne (à l'exclusion du Capitaine, de l'équipage, préposé, agent ou employé des ARMATEURS) à bord du navire à leur demande ou à la connaissance ou consentement des Affréteurs.

Les affréteurs seront responsables de toute perte ou dommage aux objets provenant de l'épave de RMS TITANIC après leur remise par les ARMATEURS. Pour éviter tout doute, les affréteurs et ses compagnies d'assurance renoncent à tout droit de poursuivre les ARMATERURS à l'égard de toutes les questions couvertes par le présent paragraphe.

23.4. Les Armateurs ne peuvent être tenus pour responsables de tout retard causé par une grève des personnes autres que les employés ou agents des Armateurs.

## ARTICLE 24 - CONDITIONS DE PAIEMENT

24.1. Le loyer globale de la Charte pour la période d'affrètement de base (54 jours), sous réserve de d'option d'arrangement décrit au paragraphe 24.2 ci-dessous, est une somme forfaitaire de 6 610 000 francs français (huit millions six cent dix mille francs) plus 3 690 000 francs français (huit millions six cent quatre-vingt-dix mille francs français) pour le recouvrement du premier coffre du TITANIQUE, plus 615 000 francs français (six cent quinze mille francs français) pour chacun des deux coffrets-forts supplémentaires du TITANIQUE.

.../...

ENVOYÉE PAR télécopieur Xerox 7020 ; 8-16-88 ; 1:21 PM ;      2038668724

Affaire 3:16-bk-02230-PMG  Doc 73-1 Déposée le 06/07/16 Page 15 de 19              ;# 13

Affaire 3:16-ap-00183-PMG  Doc 1-1 Déposée le 17/08/16 Page 15 de 19

-11-

La Chartes globale engagées pour la période d'affrètement de base (54 jours) seront payées comme suit:

a / Les Affréteurs délivreront avant le 3 juillet 1987 une lettre de crédit irrévocable en faveur de l'IFREMER,

compte no. 2335 A

      CREDIT LYONNAIS, Agence Digne Entreprises

      75008 - PARIS, 55 Champa Elysée

      Télex 660 021 P

avec la condition de paiement suivante:

    - 1 291 500 FF payables au plus tard le 3 juillet 1987

    - 2 000 000 FF à payer à la réception d'un télex émis par IFREMER confirmant le départ du NAVIRE NADIR de TOULON pour le SITE DU TITANIQUE,

    - 2 000 000 FF à payer à la réception d'un télex délivré par l'IFREMER confirmant que la première plongée NAUTILE a lieu sur le SITE DU TITANIQUE,

    - FF 2.000.000 payable trente jours après la date de la première NAUTILE DIVE sur le site TITANIC.

    - 1 318 500 FF payables le 30 septembre 1987 sur présentation d'une facture de l'IFREMER.

b / Les Affréteurs délivreront une lettre de crédit irrévocable en faveur du compte IFREMER définie au paragraphe a de FF 3 690 000 pour le recouvrement du premier coffre du TITANIQUE. .

    Cette lettre de crédit doit être émise par les Affréteurs au plus tard 48 heures après le recouvrement du coffre notifié aux Affréteurs par télex envoyé par l'IFREMER.

    Le montant de 3 690 000 FF sera payable le 30 septembre 1987 sur présentation d'une facture par IFREMER,

c / Les Affréteurs seront une lettre de crédit irrévocable en faveur du compte IFREMER défini au paragraphe a de 615 000 FF pour le recouvrement de chacun des deux coffres supplémentaires du TITANIQUE,

    Ces lettres de crédit doivent être délivrées par les Affréteurs au plus tard 48 heures après le recouvrement du coffre notifié aux Affréteurs par télex adressé par l'IFREMER.

    Le montant de 615 000 FF sera payable pour deux coffrets-forts additionnels récupérés le 30 novembre 1987 sur présentation d'une facture par IFREMER.

                                                        .../...

Appendice «A» à la Charte-partie

Nom du Navire :                                  NADIR

Navire de soutien pour la recherche sous-marine - caractéristiques principales:

| | |
|---|---|
| classe de navire | BV+1-3 ≈ 3 E (haute mer) Glace III |
| longueur totale | 55,75 m |
| faisceau global | 11,89 m |
| ébauche max. | 4,69 m |
| profondeur moulé | 5,50 m au pont principal |
| déplacement | 2035 tons |
| cargaison sur pont | 360 tons |
| aire de pont | 33 m x 11 m |
| poids mort | 1173 tons |

propulsion principale:
. quatre moteurs, puissance totale 2 400 CV
. deux moteurs sur chaque hélice à pas réglable
. propulseur auxiliaire: propulseur d'étrave à brouillard 420 CV
. puissance électrique 970 KVA
380 V 50 HZ 3 phases,

- Équipement
Système de navigation par satellite
Téléphonie par INMARSAT

- installations pour le transport du Nautile
- un portique arrière spécial (20 tonnes)

- une plateforme roulante pour le transfert du submersible à l'atelier
- installations pour le transport d'équipements de surface importants
- une crane principale (3 tonnes à 14,7m)
- récipients de laboratoire (20 ')

- agents d'hébergement et hommes 14
- personnel technique: 15
- passagers: 10

INSTITUT FRANÇAIS DE RECHERCHE
POUR L'EXPLOITATION DE LA MER
Cd. ...
...