# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

In re:                                                    Case No. 3:16-bk-2230-PMG

RMS Titanic, Inc., et al.,                                Chapter 11

_____ Debtors.                  Jointly Administered

RMS Titanic, Inc.,

                            Plaintiff,

vs.                                                       Adv. No. 3:16-ap-183-PMG

French Republic
a/k/a Republic of France,

_____ Defendant.

## ORDER ON PLAINTIFF RMS TITANIC, INC.'S AMENDED MOTION FOR ENTRY OF CLERK'S DEFAULT AND AMENDED MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT FRENCH REPUBLIC, a/k/a REPUBLIC OF FRANCE

**THIS CASE** came before the Court for hearing to consider the Plaintiff RMS Titanic, Inc.'s Amended Motion for Entry of Clerk's Default and Amended Motion for Default Judgment against Defendant French Republic, a/k/a Republic of France. (Docs. 45, 46).

The Debtor, RMS Titanic, Inc., asserts that it holds unconditional title to approximately 2,100 artifacts that were recovered from the Titanic salvage site in 1987 (the French Artifacts). In this proceeding, the Debtor seeks a determination under §105 and §363 of the Bankruptcy Code that the French Republic and its agencies have "no interest in the French Artifacts."

Under 28 U.S.C. §1330 and the Foreign Sovereign Immunities Act, a foreign state is presumptively immune from the jurisdiction of a Court of the United States, unless a specified exception to sovereign immunity applies to the case. In order to exercise jurisdiction over a foreign state under 28 U.S.C. §1330, a Bankruptcy Court must determine that the foreign state was properly served with process, and that a statutory exception to jurisdictional immunity applies to the foreign state.

In this case, the French Republic was properly served with process by delivery of a copy of the Summons and Complaint to France's Ministry of Justice.

Additionally, the French Republic is excepted from jurisdictional immunity in this action, because of the statutory waiver or abrogation of immunity provided by §106(a) of the Bankruptcy Code for actions against a foreign state that are brought under §105 and §363 of the Bankruptcy Code. Accordingly, the Court may exercise jurisdiction over the French Republic in this action under 28 U.S.C. §1330.

Pursuant to 28 U.S.C. §1608(e), however, the Court may not enter a default judgment against a foreign state unless the plaintiff establishes its right to relief "by evidence satisfactory to the court." In this case, an evidentiary hearing should be scheduled on the Debtor's Amended Motion for Default Judgment, because the current record does not contain satisfactory evidence that the French Republic has no interest in the French Artifacts.

## I. Background

On June 14, 2016, the Debtor and seven affiliates filed petitions under Chapter 11 of the Bankruptcy Code. According to their Case Management Summary, the Debtors own approximately 5,500 artifacts recovered from the Titanic shipwreck, and present the artifacts to the public at their exhibitions and other venues. (Main Case, Doc. 8).

On June 20, 2016, the Debtors filed a Motion in the main bankruptcy case for an "Order Pursuant to Bankruptcy Code Sections 105 and 363 and Bankruptcy Rules 6003, 6004, and 9014 Authorizing the Debtors to Market and Sell Certain Titanic Artifacts Free and Clear of Liens, Claims, and Interests." (Main Case, Doc. 28).

According to the Motion, the Debtors' total Titanic collection consists of (1) the French Artifacts or French Collection, which includes approximately 2,100 artifacts that were recovered during a joint expedition with the French Government's oceanographic institute in 1987, and (2) the American Artifacts or American Collection, which includes more than 3,000 additional artifacts that were recovered during expeditions in 1993, 1994, 1996, 1998, 2000, and 2004.

In the Motion to Market and Sell Certain Artifacts in the main case, the Debtors asserted that they sought "only to sell a narrow subset of artifacts from the French Collection to pay the creditors in full, return all equity positions to the Debtors' shareholders, and possibly fund some or all of the Titanic reserve account." (Main Case, Doc. 28, ¶ 25).

On July 22, 2016, the Court entered an Order denying the Debtors' Motion, without prejudice to the Debtors' right to file the request to market and sell the French Artifacts as an adversary proceeding pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure. (Main Case, Doc. 102).

3

On August 17, 2016, the Debtor filed a Complaint against the French Republic.  (Doc. 1).  In the Complaint, the Debtor alleges that its predecessor in interest (Titanic Ventures Limited Partnership) conducted an expedition to the Titanic salvage site in 1987, with the assistance of France's oceanographic institute, and recovered approximately 2,100 artifacts from the wreck (the French Artifacts).  (Complaint, ¶ 11).  The Debtor further alleges:

> 15. On October 20, 1993, an Administrator in the French Office of Maritime Affairs (Ministry of Equipment, Transportation and Tourism) pursuant to the proces verbal awarded the Company title to the French Artifacts (the "Proces Verbal").

(Complaint, ¶ 15).  The Debtor further alleges that the administrator's award noted the "assurances" of the Debtor's predecessor that the artifacts would not be sold or disbursed, except for the purposes of an exhibition.  (Complaint, ¶ 19).

Finally, the Debtor alleges that (1) the Proces-Verbal is a legally enforceable decision that transferred legal title to the French Artifacts to the Debtor, (2) that the transfer of title was unconditional, and (3) that the unconditional title is not encumbered by any liens or other interests.  (Complaint, ¶¶ 25-28).

Accordingly, the Debtor seeks a declaration pursuant to §105 and §363 of the Bankruptcy Code, and Rule 7001(2) and Rule 7001(9) of the Federal Rules of Bankruptcy Procedure, that "France and all French government agencies have no interest in the French Artifacts."  (Complaint, ¶ 30).

**II. Jurisdiction under the FSIA**

The existence of subject matter jurisdiction in an action against a foreign state is governed by the Foreign Sovereign Immunities Act (FSIA), which provides the sole basis for jurisdiction over a foreign state in federal court.  Continental Casualty Company v. Argentine Republic, 893 F.Supp.2d 747, 750

(E.D. Va. 2012). The FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." SACE S.p.A. v. Republic of Paraguay, 2017 WL 1066564, at 6 (D.D.C.).

The FSIA is codified at 28 U.S.C. §§1602 through 1611, and the jurisdictional provision related to the FSIA is found at 28 U.S.C. §1330. Vermeulen v. Renault, U.S.A., Inc., 985 F.2d 1534, 1543 (11th Cir. 1993). Section 1330 is "the jurisdictional statute corresponding to the FSIA." Coleman v. Alcolac, Inc., 888 F.Supp. 1388, 1399-1400 (S.D. Tx. 1995). Section 1330 provides:

**§1330. Actions against foreign states**

(a) The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of this title or under any applicable international agreement.

(b) Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title.

28 U.S.C. §1330(a),(b)(Emphasis supplied). Generally, a "foreign state" under §1330 and the FSIA is an entity that has the attributes of statehood, meaning a defined territory and population, self-governance and foreign relations, and the capacity to wage war and enter international agreements. Kirschenbaum v. 650 Fifth Avenue and Related Properties, 830 F.3d 107, 123 (2d Cir. 2016).

In determining whether to exercise jurisdiction over a foreign state under §1330(a) and (b), federal courts must conduct a two-part inquiry as to: "(1) whether service of the foreign state was accomplished properly, and (2) whether one of the statutory exceptions to sovereign immunity applies." Jouanny v. Embassy of France in the United States, 2016 WL 7156465, at 2 (D.D.C.)(quoting Abur v. Republic of Sudan, 437 F.Supp.2d 166, 171-72 (D.D.C. 2006)). The "interlocking provisions" of §1330 "compress subject-matter jurisdiction and personal jurisdiction into

a single, two-pronged inquiry: (1) whether service on the foreign state was accomplished properly, and (2) whether one of the statutory exceptions to sovereign immunity applies." <u>Abur v. Republic of Sudan</u>, 2006 WL 1892066, at 3 (D.D.C.)(quoted in <u>Howe v. Embassy of Italy</u>, 68 F.Supp.3d 26, 31 (D.D.C. 2014)).

Under §1330, therefore, a Court may "consider the merits of a claim against a foreign state only if proper service is effectuated and one of the FSIA's enumerated exceptions to sovereign immunity applies to that claim." <u>Abur v. Republic of Sudan</u>, 2006 WL 1892066, at 3.

### A. Service of process

Rule 4(j)(1) of the Federal Rules of Civil Procedure, as made applicable in bankruptcy proceedings by Rule 7004(a)(1) of the Federal Rules of Bankruptcy Procedure, provides that a foreign state must be served in accordance with 28 U.S.C. §1608.  F.R.Civ.P. 4(j)(1).

Section 1608 is part of the FSIA, and provides in part:

**§ 1608. Service; time to answer; default**

(a) <u>Service in the courts of the United States and of the States shall be made upon a foreign state</u> or political subdivision of a foreign state:

(1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or

(2) if no special arrangement exists, <u>by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents;</u>

28 U.S.C. §1608(a)(1),(2)(Emphasis supplied).

With respect to the French Republic, the applicable "international convention is the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil or Commercial

Matters ('Hague Convention'), to which the United States and France are signatories.  The Hague Convention requires signatory states 'to designate a Central Authority' to receive service." Jouanny v. Embassy of France, 2016 WL 7156465, at 3.

The Central Authority designated by the French Republic to receive service is its Ministry of Justice.  Id.  See https://www.hcch.net/en/states/authorities/details3/?aid=256.

In this case, the Debtor delivered a copy of the Summons and Complaint to the French Republic's Ministry of Justice.  On December 16, 2016, the French Ministry of Justice issued a Certificate attesting that the "undersigned authority has the honour to certify, in conformity with Article 6 of the Convention, that the document has been served in accordance with the provisions of sub-paragraph a) of the first paragraph of Article 5 of the Convention."  The stamp of the Ministry of Justice appears on the Certificate.  (Doc. 45, Exhibit A).

See also the correspondence from the Justice Attache of the Embassy of France dated January 19, 2017, in which the Justice Attache states that "I write to inform the Court that proper service has been done by RMS Titanic, Inc. via the Ministry of Justice of France on November 23, 2016."  (Doc. 34, p. 2).

The French Republic was properly served with process under 28 U.S.C. §1608(a)(2) by delivery of a copy of the Summons and Complaint to the French Ministry of Justice in accordance with the Hague Convention.

### B. An Exception to Sovereign Immunity

After determining that service was properly accomplished, the second step of the two-pronged inquiry regarding jurisdiction over a foreign state under §1330 involves "whether one of the statutory exceptions to sovereign immunity applies."  Jouanny v. Embassy of France, 2016 WL 7156465, at 2.

### 1. Sovereign Immunity generally

As indicated above, §1330 and the FSIA provide the sole basis for obtaining jurisdiction over a foreign state in federal court. <u>Continental Casualty Company v. Argentine Republic</u>, 893 F.Supp.2d at 750. "The starting point in the analysis is the general rule under the FSIA that foreign states and their instrumentalities are immune from the jurisdiction of United States courts." <u>Coleman v. Alcolac, Inc.</u>, 888 F.Supp. 1388, 1400 (S.D. Tx. 1995). Section 1604 of title 28 provides:

**§1604. Immunity of a foreign state from jurisdiction**

> Subject to existing international agreements to which the United States is a party at the time of enactment of this Act <u>a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607</u> of this chapter.

28 U.S.C. §1604(Emphasis supplied). Under the FSIA, foreign states are presumptively immune from suit in the United States unless one of the statute's exceptions applies to the action. <u>Freund v. Republic of France</u>, 592 F.Supp.2d 540, 552 (S.D.N.Y. 2008). See also <u>SACE S.p.A. v. Republic of Paraguay</u>, 2017 1066564, at 7("In short, a foreign state is 'presumptively immune from the jurisdiction of United States courts unless a specific exception applies.'")(citations omitted).

### 2. An exception to sovereign immunity where the immunity is waived

Under §1604, therefore, foreign states are generally immune from suit in United States courts. But §1605 of the FSIA "outlines certain exceptions to foreign sovereign immunity." <u>Cortez Byrd v. Corporacion Forestal y Industrial de Olancho, S.A.</u>, 974 F.Supp.2d 264, 268 (S.D.N.Y. 2013). Section 1605(a) provides in part:

**§1605. General exceptions to the jurisdictional immunity of a foreign state**

(a) <u>A foreign state shall not be immune</u> from the jurisdiction of courts of the United States <u>in any case</u>-

8

(1) in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver;

28 U.S.C. §1605(a)(1)(Emphasis supplied).

Under certain conditions, a foreign state's sovereign immunity may be waived or abrogated by statute. Goldberg-Botvin v. Islamic Republic of Iran, 938 F.Supp.2d 1, 7 (D.D.C. 2013). In fact, it is a well-established principle of statutory construction that Congress may abrogate a sovereign's immunity by enacting a statute that clearly establishes the abrogation. State of Florida v. Seminole Tribe of Florida, 181 F.3d 1237, 1242 (11th Cir. 1999).

Sovereign immunity has been waived or abrogated by statute, for example, with respect to suits against foreign states that have sponsored or supported acts of terrorism. Stansell v. Republic of Cuba, 2016 WL 6581171, at 8 (D.D.C.)(citing 28 U.S.C. §1605A(a)(1)). Courts may "obtain original jurisdiction for suits against foreign states, and those states' general immunities are waived by operation of statute" under certain conditions, such as the statutory waiver for state-sponsored terrorism provided by 28 U.S.C. §1605A(a)(1). Oveissi v. Islamic Republic of Iran, 879 F.Supp.2d 44, 51 (D.D.C. 2012).

### 3. Waiver or abrogation under §106 of the Bankruptcy Code

Sovereign immunity has also been waived or abrogated by statute with respect to issues arising under certain sections of the Bankruptcy Code. Section 106(a) of the Bankruptcy Code provides:

**11 U.S.C. §106. Waiver of sovereign immunity**

(a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:

(1) Sections 105, 106, 107, 108, 303, 346, 362, 363, 364, 365, 366, 502, 503, 505, 506, 510, 522, 523, 524, 525, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 722, 724, 726, 744, 749, 764, 901, 922, 926, 928, 929, 944, 1107, 1141, 1142, 1143, 1146, 1201, 1203, 1205, 1206, 1227, 1231, 1301, 1303, 1305, and 1327 of this title.

(2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.

11 U.S.C. §106(a)(Emphasis supplied).   The waiver or abrogation of sovereign immunity under §106(a) applies to "governmental units," which is expressly defined in §101 of the Bankruptcy Code to include foreign states.

### 11 U.S.C. §101. Definitions

. . .

(27) The term "governmental unit" means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

11 U.S.C. §101(27)(Emphasis supplied).

Pursuant to §106(a) and §101(27), "[f]oreign states can no longer assert sovereign immunity from liability for certain actions under the Bankruptcy Code" because "section 106 abrogates sovereign immunity as to a 'governmental unit,' which the Bankruptcy Code specifically defines to include a foreign state or other foreign or domestic government." In re Tuli, 172 F.3d 707, 711-12 (9th Cir. 1999).  In Tuli, for example, the Court determined that "Iraq is not protected by sovereign immunity from Tuli's adversary complaint under 11 U.S.C. §542." In re Tuli, 172 F.3d at 713.

See also In re Krystal Energy Co., Inc., 357 F.3d 1055 (9th Cir. 2004), reversing 308 B.R. 48, 54 (D. Ariz. 2002)("Section 106(a) has been found to effectively abrogate the sovereign immunity of

*foreign states*.")(Emphasis in original), and <u>In re National Cattle Congress</u>, 247 B.R. 259, 266 (Bankr. N.D. Iowa 2000)(Congress may abrogate sovereign immunity by express statutory language, and Section 106(a) has "been found to effectively abrogate the sovereign immunity of foreign states.").

Further, the waiver or abrogation of sovereign immunity for foreign states under §106(a) supports other sections of the Bankruptcy Code providing for the Court's broad jurisdiction to determine matters involving property of a bankruptcy estate. Section 1334(e) of title 28, for example, provides that district courts "shall have exclusive jurisdiction- of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." 28 U.S.C. §1334(e).

Under §1334(e), "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." <u>Pacor, Inc. v. Higgins</u>, 743 F.2d 984, 994 (3d Cir. 1984)(quoted in <u>In re Ryan</u>, 2008 WL 1969593, at 2 (11th Cir.), and <u>In re Marathe</u>, 459 B.R. 850, 854 (Bankr. M.D. Fla. 2011)).

Section 1334(e) and §106(a) address the principle that Courts should have the authority to administer insolvent estates that are brought before them, a principle that appears to possess international recognition. In this case, for example, the Debtor engaged David P. Stewart, an attorney and law professor specializing in international law, to provide an opinion on sovereign immunity issues in this adversary proceeding. According to Mr. Stewart:

> 9. That statutory waiver of immunity [under §106(a)] is consistent with the terms of Article 13 of the 2004 United Nations Convention on the Jurisdictional Immunities of States and Their Properties (the "<u>2004 UN Convention</u>"), to which France is a state party, having signed it on January 17, 2007 and approved (ratified) it on April 12, 2011. Article 13 of the 2004 UN Convention <u>waives sovereign immunity for any State Party before a court of another State in any proceeding which relates to the administration of property, including trust property and the estate of a bankruptcy entity.</u>

(Doc. 50, Declaration of David P. Stewart, ¶ 9)(Emphasis supplied).   According to the Debtor, therefore, the French Republic has undertaken "international legal obligations regarding waiver of sovereign immunity for *in rem* bankruptcy proceedings." (Doc. 49, p. 12).

### C. Jurisdiction of this proceeding

In summary, §1330 of title 28 provides for original jurisdiction of any action against a foreign state in which the foreign state is not entitled to sovereign immunity.  Section 1605(a) of the FSIA provides an exception to a foreign state's sovereign immunity in cases where the immunity is expressly or impliedly waived.  28 U.S.C. §1605(a).  With respect to specified actions under the Bankruptcy Code, a foreign state's sovereign immunity is statutorily waived or abrogated by §106(a) of the Bankruptcy Code.

Such a waiver is consistent with the Court's expansive jurisdiction to determine all matters related to property of a bankruptcy estate, and is also consistent with the principle recognized by the French Republic that sovereign immunity may be waived for any proceeding that relates to the administration of a bankruptcy estate.

In this case, the Debtor's action against the French Republic is brought under Bankruptcy Rule 7001 and Bankruptcy Code §105 and §363 for a determination that the French Republic has no interest in the French Artifacts claimed by the Debtor as property of its estate.  Issues under §105 and §363 are listed in §106(a) as actions that are subject to the waiver of immunity, and the French Republic's sovereign immunity is statutorily waived or abrogated in this case pursuant to §106 of the Bankruptcy Code.

The French Republic was properly served under 28 U.S.C. §1608, and an exception to sovereign immunity applies to this proceeding by virtue of the statutory waiver or abrogation of immunity under

12

11 U.S.C. §106.  Accordingly, this Court has original jurisdiction of this proceeding pursuant to 28 U.S.C. §1330.

### III. The Motions

Federal courts are granted original jurisdiction in suits "against a foreign state . . . as to any claim for relief . . . with respect to which the foreign state is not entitled to immunity." 28 U.S.C. §1330(a). In this case, the Court may exercise jurisdiction over the French Republic under §1330 because (1) service of process was properly accomplished, and (2) a statutory exception to sovereign immunity applies. Jouanny v. Embassy of France, 2016 WL 7156465, at 2.

The next issues for determination, therefore, are the specific matters before the Court:  (1) the Debtor's Amended Motion for Entry of Clerk's Default, and (2) the Debtor's Amended Motion for a Default Judgment against the French Republic. (Docs. 45, 46).

#### A. Motion for Default

The Court has determined that the French Republic was properly served under §1608(a)(2) of the FSIA by delivery of a copy of the Summons and Complaint to the French Republic's Ministry of Justice.  On December 16, 2016, the French Ministry of Justice issued a Certificate attesting that the Summons and Complaint were served.  (Doc. 45, Exhibit A).

Subsection (d) of §1608 provides that a foreign state "shall serve an answer or other responsive pleading to the complaint within sixty days after service is made." 28 U.S.C. §1608(d).

As of the date of this Order, the French Republic has not filed an answer or other response to the Complaint filed and served by the Debtor.  Rule 55(a) of the Federal Rules of Civil Procedure, as made applicable to this proceeding by Rule 7055 of the Federal Rules of Bankruptcy Procedure, provides:

**Rule 55. Default; Default Judgment.**

    **(a) Entering a Default.** When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

F.R.Civ.P. 55(a). Accordingly, the Debtor's Amended Motion for Default should be granted in this proceeding, and the Clerk should be directed to enter a default against the French Republic pursuant to Rule 55(a) of the Federal Rules of Civil Procedure.

    **B. Motion for Default Judgment**

An evidentiary hearing should be scheduled on the Debtor's Amended Motion for Default Judgment, however, because the current record does not contain satisfactory evidence to establish that the French Republic has no interest in the French Artifacts.

Section 1608(e) of the FSIA provides:

    **§1608. Service; time to answer; default**

        . . .

    (e) <u>No judgment by default shall be entered by a court of the United States</u> or of a State <u>against a foreign state</u>, a political subdivision thereof, or an agency or instrumentality of a foreign state, <u>unless the claimant establishes his claim or right to relief by evidence satisfactory to the court.</u>

28 U.S.C. §1608(e)(Emphasis supplied). The section is intended to protect foreign states from unfounded judgments based solely on a procedural default. <u>Fraenkel, et al., v. Islamic Republic of Iran, et al.</u>, 2017 WL 1214353, at 6 (D.D.C).

Section 1608(e) "provides foreign sovereigns a special protection akin to that assured the federal government" by Rule 55(d) of the Federal Rules of Civil Procedure, which provides that a default judgment may be entered against the United States "only if the claimant establishes a claim or right to

relief by evidence that satisfies the court." Braun v. Islamic Republic of Iran, 2017 WL 79937, at 5 (D.D.C.); F.R.Civ.P. 55(d).

"The FSIA does not specify what kinds of evidence the plaintiff must submit to meet this evidentiary burden; it 'leaves it to the court to determine precisely how much and what kinds of evidence the plaintiff must provide.'" Stansell v. Republic of Cuba, 2016 WL 6581171, at 8 (D.D.C.)(quoting Han Kim v. Democratic People's Republic of Korea, 774 F.3d 1044, 1047 (D.C.Cir. 2014)). The FSIA "leaves it to the court to determine precisely how much and what kinds of evidence the plaintiff must provide." Braun v. Islamic Republic of Iran, 2017 WL 79937, at 5.

Section 1608(e), however, obligates a court to make a thorough inquiry before entering a default judgment against a foreign state. Firebird Global Master Fund II Ltd., v. Republic of Nauru, 915 F.Supp.2d 124, 126 (D.D.C. 2013). Under §1608(e), the court is obligated to satisfy itself that the plaintiff established a right to the relief that it requested. Fraenkel v. Islamic Republic of Iran, 2017 WL 1214353, at 6.

In this case, the Debtor alleges that its predecessor conducted an expedition to the Titanic salvage site in 1987, with the assistance of France's oceanographic institute, and recovered approximately 2,100 artifacts from the wreck. (Doc. 1, Complaint, ¶ 11). The Debtor further alleges that a French official awarded the Debtor unconditional title to the French Artifacts pursuant to a Proces-Verbal on October 20, 1993. (Doc. 1, Complaint, ¶15). The relief requested by the Debtor in its Complaint is a determination under §105 and §363 of the Bankruptcy Code that "France and all French government agencies have no interest in the French Artifacts." (Doc. 1, Complaint, ¶ 30).

The Court has considered the documents submitted by the Debtor to support its claim of unconditional title, and cannot determine that the current record contains satisfactory evidence to

establish that the French Republic has no interest in the French Artifacts, or that the Debtor is entitled

at this time to the relief that it requests.  The Court reaches this decision for the following reasons:

### 1. The Proces-Verbal

First, the Debtor's assertion that it holds unconditional title to the French Artifacts, and its further

assertion that the French Republic has no interest in the French Artifacts, depend primarily on the

meaning and effect of the Proces-Verbal dated October 20, 1993.  The Proces-Verbal provides in its

entirety:

> In accordance with its decision dated October 12, 1993, taken pursuant to the provisions of the decree N 61-1547 dated December 26, 1961 determining the regime of the wreck at Sea, <u>M. Chapalain, representing the Head of the Headquarter of Maritime Affairs of Lorient, has carried out this day the delivery of the artifacts recovered from the Titanic wreck in 1987</u> and whose legal owners or heirs have not been identified pursuant to the publicity measures implemented by the French Authorities, <u>to Titanic Ventures Limited Partnership, in its capacity of salvager.</u>
>
> <u>The list of the artifacts is exhibited to the present minutes together with the letter of intent of Titanic Ventures Limited Partnership dated September 22, 1993.</u>

(Doc. 1, Complaint, Exhibit B)(Emphasis supplied).   The Debtor contends that this document

"constitutes a legally enforceable administrative decision that transferred to RMST legal title to the

French Artifacts," that the "transfer of title to RMST was unconditional," that the title "contains no

liens or encumbrances," and that the French Republic "never had a beneficial interest in the French

Artifacts." (Doc. 1, Complaint, ¶¶ 25-28).

The English translation of the French Proces-Verbal, as quoted above, appears to provide that the

French Maritime Affairs Administrator "carried out . . . the delivery" of the French Artifacts to the

Debtor's predecessor as salvager of the Titanic wreck site.  (Doc. 1, Complaint, Exhibit B).  Within its

text, the document does not expressly award unconditional title of the Artifacts to the Debtor's

predecessor, and the record does not clearly evidence the legal effect of the document or the nature of the interest in the Artifacts that was delivered to the Debtor by the Administrator. The Proces-Verbal does not indicate, for example, whether the Administrator's prior "decision dated October 12, 1993" includes additional details regarding the delivery of the Artifacts.

### 2. The letter of intent

Second, the Proces-Verbal provides that the Debtor's predecessor's "letter of intent" dated September 22, 1993, is attached to the document. The letter of intent states in part:

> On this occasion, I would like, on behalf of Titanic Ventures, of which I am the General Partner, to inform you of Titanic Ventures' intent to use the objects collected from the wreck of the Titanic in a manner respecting the memory of these objects' initial owners.

> Along these lines, I would like to indicate to you that <u>these objects shall be used only for cultural purposes and shall accordingly not form the subject matter of any transaction leading to their dispersion (except for the purposes of an exhibition) and that no such object shall be sold</u>.

(Doc. 1, Complaint, Exhibit C)(Emphasis supplied). The letter of intent is attached to and referenced in the Proces-Verbal, but the record does not explain whether the Proces-Verbal intended to substantively incorporate the terms of the letter, including the representation that the French Artifacts would not be sold or disbursed.

### 3. The Affidavits

Third, the Debtor submitted two affidavits in support of its position that the Proces-Verbal constituted an award of unconditional title to the French Artifacts.

The first Affidavit was furnished by Jerome Henshall, the "Chief Financial Officer, Director of Premier Exhibitions, Inc." Premier Exhibitions, Inc. is an affiliate of the Debtor. (Case No. 3:16-bk-2232-PMG). This Affidavit identifies the Proces-Verbal and the letter of intent, but states only in

17

conclusory fashion that (1) the Proces-Verbal was a legally enforceable administrative decision that transferred the French Artifacts to the Debtor unconditionally, and that (2) the French Republic has no beneficial interest in the Artifacts. (Doc. 12).

The second Affidavit is the Declaration of Denis Mouralis, a law professor at Aix Marseille University in France, who was engaged by the Debtor "to advise on the legal significance under French law of the *proces-verbal*." In his Declaration, Mr. Mouralis states:

> 10. This *proces-verbal* was executed pursuant to decree 61-1547 of 26 December 1961 (art. 13), in order to transfer property of some artefacts to Titanic Ventures Limited Partnership, as the entity that recovered those artefacts from the Titanic wreck.
>
> . . .
>
> 14. According to the provisions of decree 61-1547 (art. 13), such transfer of ownership is total and not conditional. Decree 61-1547 does not provide that any other entity than the rescuer should have any interest in the goods assigned. Decree 61-1547 does not provide that a third party should receive liens or encumbrances on the artefacts assigned to the rescuer.

(Doc. 49, Exhibit 5). The conclusions reached in the Mouralis Declaration appear to be based on the general purpose and operation of "decree 61-1547 of 26 December 1961." The Declaration does not address whether decree 61-1547 allows an Administrator to modify an award in specific circumstances, such as by incorporating a salvager's representations into a Proces-Verbal, or whether the attachment of the Debtor's letter of intent to the Proces-Verbal in this case may have affected the property transferred to the Debtor.

### 4. The Note from the French Embassy

Finally, the record includes a Note from the Embassy of the Republic of France dated July 8, 2016. The Note is attached to the Debtor's Complaint, and states in part:

France's ownership of recovered artifacts dates back to the expedition on the site of the wreck in 1987, in which the Institut Francais de Recherche pour l'Exploitation de la Mer (IFREMER) played an active part, namely the use of its vessels by Oceanic Research and Exploration Ltd. to dive on "HMS TITANIC to promote the survey of the wreck and to recover objects from the Titanic".

Under Article 20 "Recovery of objects" agreed upon in a Charter signed by both parties (IFREMER as the owner and Oceanic Research and Exploration as the Charterer), it was formally agreed that "Charterers shall not sell the objects collected by Owners but shall use them only for exhibition purposes".

. . .

Thus, in the attached letter from September 22, 1993, signed by the Director of TVLP, France was assured that "the artifacts will be used only for cultural purposes and will not, therefore, be part of any operations that would lead to their dispersion, with the exception of exhibition purposes, and none of the artifacts will be sold".

<u>With this understanding and signed guarantee, the French administration agreed to grant the title to TVLP in a Proces-Verbal of October 20, 1993</u>.

(Doc. 1, Complaint, Exhibit D)(Emphasis supplied). Based on these assertions, the French Embassy appears to contest the Debtor's request for a determination that "France has no interest in the French artifacts."

### 5. Right to relief not established by satisfactory evidence

In summary, the Debtor contends that it holds unconditional title to the French Artifacts, and that the Artifacts are not subject to any claim or interest of the French Republic. The Debtor's assertion of unconditional title is predicated on the Proces-Verbal of the Maritime Affairs Administrator dated October 20, 1993, but the Proces-Verbal does not expressly refer to such an award of unconditional title. Further, the Proces-Verbal "exhibits" a letter from the Debtor's predecessor in interest representing that the Artifacts will not be sold. The Debtor's supporting Affidavits do not adequately explain the terms of the Proces-Verbal or the impact of the attached letter. And finally, the French

Embassy appears to view the Proces-Verbal as based on the Debtor's "signed guarantee" that the Artifacts will not be sold, as contained in the letter.

For these reasons, the record at this time is not satisfactory to establish that the Debtor's title to the French Artifacts is unconditional, or that the Debtor is entitled to a judgment by default determining that "France and all French government agencies have no interest in the French Artifacts." 28 U.S.C. §1608(e). Accordingly, the Debtor's Amended Motion for Default Judgment should be scheduled for an evidentiary hearing.

**IV. Conclusion**

The Debtor asserts that it holds unconditional title to approximately 2,100 artifacts that were recovered from the Titanic salvage site in 1987 (the French Artifacts). In this proceeding, the Debtor seeks a determination under Rule 7001(2) and Rule 7001(9) of the Federal Rules of Bankruptcy Procedure, and under §105 and §363 of the Bankruptcy Code, that France and its agencies have "no interest in the French Artifacts."

Under 28 U.S.C. §1330 and the Foreign Sovereign Immunities Act, a foreign state is presumptively immune from the jurisdiction of a Court of the United States, unless a specified exception to sovereign immunity applies to the case. In order to exercise jurisdiction over a foreign state under 28 U.S.C. §1330, a Bankruptcy Court must determine that the foreign state was properly served with process, and that a statutory exception to jurisdictional immunity applies to the foreign state.

In this case, the French Republic was properly served with process by delivery of a copy of the Summons and Complaint to France's Ministry of Justice.

Additionally, the French Republic is excepted from jurisdictional immunity in this action, because of the statutory waiver or abrogation of immunity provided by §106(a) of the Bankruptcy Code for actions against a foreign state that are brought under §105 and §363 of the Bankruptcy Code. Accordingly, the Court may exercise jurisdiction over the French Republic in this action under 28 U.S.C. §1330.

Pursuant to 28 U.S.C. §1608(e), however, the Court may not enter a default judgment against a foreign state, unless the plaintiff establishes its right to relief "by evidence satisfactory to the court." In this case, an evidentiary hearing should be scheduled on the Debtor's Amended Motion for Default Judgment, because the current record does not contain satisfactory evidence that the French Republic has no interest in the French Artifacts.

Accordingly:

**IT IS ORDERED** that:

1. The Plaintiff RMS Titanic, Inc.'s Amended Motion for Entry of Clerk's Default against Defendant French Republic, a/k/a Republic of France is granted, and the Clerk shall enter a default against the Defendant pursuant to Rule 55 of the Federal Rules of Civil Procedure, as made applicable to this proceeding by Rule 7055 of the Federal Rules of Bankruptcy Procedure.

2. The Plaintiff RMS Titanic, Inc.'s Amended Motion for Default Judgment against Defendant French Republic, a/k/a Republic of France shall be scheduled for an evidentiary hearing by separate Order.

3. A Pretrial Hearing will be conducted on _June 22_, 2017, at _1:30_ o'clock _P_.m. at 300 North Hogan Street, 4th Floor – Courtroom 4A, Jacksonville, Florida 32202, to consider the

21

scheduling of the evidentiary hearing and any related case management matters that may come before the Court.

**DATED** this 25ᵗʰ day of _April_____, 2017.

**BY THE COURT**

PAUL M. GLENN
United States Bankruptcy Judge

22